THOMAS B. DEKAY vs. THE ADMINISTRATORS OF WILLIAM DARRAH, deceased.

The death of a person against whom a cause of action has accrued, does not bar or suspend the operation of the statute of limitations. And there is nothing in the act concerning the estates of persons who die insolvent, (*Rev. Laws* 766) which suspends the statute of limitations for the period of six months from the time of his death.

The course of decisions both in England and in this country, has established the rule beyond doubt, that when the statute of limitations has commenced running, it runs over *all* subsequent disabilities and intermediate acts and events. And there is no distinction between a disability or impediment on the part of the plaintiff, or where it arises from some change or event that has happened to the debtor. Nor is there any difference between a voluntary and involuntary

disability. Our legislature has interfered in the case of the absence of the debtor from the state, and has expressly excepted out of the statute, the period of such absence. *Rev. Laws.* 670.

If a party has been restrained, by injunction out of Chancery, till the statute has run out, and afterwards sues at law, the statute will be a good defence ; but the Court of Chancery, in such case, may restrain the defendant from pleading the statute.

The case of *Burnet* v. *Administrators of Bryan*, 1 *Halst.* 377, examined.

Plaintiff cannot file two replications to one plea.

——

This was an action of assumpsit brought in this court upon a promissory note, drawn by Nicholas Ryerson to William Darrah, or order, payable ninety days after date, at the Sussex Bank, for five hundred dollars, without defalcation or discount, for value received, dated July 12, 1824. The note was endorsed by the said William Darrah to David Ford, and by Ford, endorsed to the plaintiff in this suit. The declaration contained but a single count on the note. The defendants pleaded the general issue and the statute of limitations. The plaintiff replied to the plea of the statute of limitations, 1st. that the cause of action did accrue within six years before the commencement of the suit, and 2d, that the action was commenced immediately after the expiration of six months from the time of the death of the said William Darrah, which was before the expiration of six years after the cause of action accrued. To these replications the defendants demurred as follows :

" And the said Henry T. Darrah, and Richard E. Darrah, administrators of William Darrah, deceased, say, that the said second replication of the said plaintiff, Thomas B. Dekay, to the second plea of them, the said defendants, and the matters contained therein, in manner and form as the same are above pleaded and set forth, are not sufficient in law for the said plaintiff to have or maintain his aforesaid action thereof, against them, the said defendants ; and that they, the said defendants, Henry T. Darrah, and Richard E. Darrah, administrators of William Darrah, deceased, are not bound by the law of the land, to answer the same ; and this they, the said defendants, Henry T. Darrah, and Richard E. Darrah, administrators of

William Darrah, deceased, are ready to verify—Wherefore, for want of a sufficient replication in this behalf, they, the said Henry T. Darrah, and Richard E. Darrah, administrators of William Darrah, deceased, pray judgment if the said plaintiff ought to have or maintain his aforesaid action thereof, against them, &c. And for causes of demurrer in law according to the form of the statute in such case made and provided, the said Henry T. Darrah, and Richard E. Darrah, administrators as aforesaid, do set down and to the court, here express the causes of demurrer following, that is to say : For that there is no such cause of exception in the statute of limitations for not bringing the action within six years after the cause of action accrued, as that set forth in the said further replication. And because the matters contained in the said further replication do not constitute a part of one entire defence with the matters contained in the first replication to the said second plea; and because the said plaintiff replies several and distinct matters to the same plea, and tenders several issues, when one is sufficient to defeat the defendant's said plea; and for that the said further replication is double, uncertain, informal and insufficient; and because the same concludes with a verification when it ought not.

There was a joinder in demurrer; and at the November term, 1832, *I. H. Williamson,* argued in support of the demurrer, and *P. Dickerson,* contra. The court sustained the demurrer on the ground of duplicity ; the plaintiff having filed two replications to one plea. Whereupon, *Dickerson* moved for leave to amend, which was granted upon payment of costs. The first replication to the statute of limitation was stricken out, and the cause stood upon the demurrer to the second replication, which is as follows :

And the said Thomas B. Dekay, as to the said plea of the said Henry T. Darrah, and Richard E. Darrah, administrators as aforesaid, by them secondly above pleaded, saith, that he, the said Thomas B. Dekay, by reason of any thing by them, in that plea alleged, ought not to be barred from having and maintaining his aforesaid action thereof, against them, because he saith, that before the expiration of six years, after the cause of action in the said declaration mentioned, accrued, to the said Thomas D. Dekay, to wit, on the eighth day of May, in the

Dekay *v.* Darrah.

year of our Lord, one thousand eight hundred and thirty, the said William Darrah, deceased, died, and the said Thomas B. Dekay commenced this suit immediately after the expiration of six months from the time of the death of the said William Darrah, and this, the said Thomas B. Dekay, is ready to verify; wherefore, he prays judgment, and his damages by him sustained on occasion of the non performance of the said promise and undertaking, in the said declaration mentioned, to be adjudged to him."

The counsel of the parties agreed to submit the case to the court on the argument already made.

The opinion of the court was delivered at this term by

HORNBLOWER, C. J. The declaration is on a promissory note, endorsed by the intestate, and contains but one count. The defendants plead first, the general issue, and secondly, *actio non accrevit infra sex annos.*

The plaintiff replies to the second plea, that before the expiration of six years after the cause of action accrued, to wit, on, &c. the intestate died, and that the suit was commenced immediately after the expiration of six months from that time. To this replication, there is a demurrer; and the question raised for our consideration is, whether the death of a person, against whom a cause of action has accrued, bars or suspends the operation of the statute of limitations?

Upon the statute itself, *Rev. Laws* 410, and the supplement thereto, *Rev. Laws* 670, there is no room for such a question. By the former, the exceptions in favor of the creditor, are confined to infancy, coverture and insanity. But by the supplement, it is provided, that if a person against whom an action shall accrue, shall not be resident in this state, when the action accrues, or shall remove from this state, *after* the same shall accrue, and before the time of limitation has expired, then the time during which such person shall not reside in this state, shall not be computed as part of the limited period mentioned in the statute; but the creditor shall have all the time allowed him by the original act, in which to prosecute his action, exclusive of, or over and above the period during which the debtor was not a resident of this state. Here then, is one, and it is the first and only instance, in which the legislature have, by

express provision, arrested the progress of the statute, after it has once commenced running, viz: when a debtor removes from the state after the cause of action has accrued.

But it is insisted by the counsel for the plaintiff, that by a just construction of the act concerning the estates of persons who die insolvent, passed in June, 1820, *Rev. Laws* 766, the death of a person against whom there may be an existing cause of action, suspends the statute of limitations for the period of six months from the time of his death.

By the second section of that act it is provided, that to enable executors and administrators to examine into the situation of the estate, to ascertain the amount and value thereof, and of the debts to be paid thereout, no action at law or equity, shall be brought against them within six months after the death of the testator or intestate, except in certain specified cases.

It is clear, under the provisions of that act, that if a debtor dies after the right of action has accrued, the creditor has less time within which to bring his action, than he otherwise would have; unless it is, so far, a constructive repeal or modification of the statute of limitations.

But it is equally clear, that the legislature had not the statute of limitations under consideration when they passed that act. They were legislating upon a totally different subject, and providing for a fair distribution among creditors of the estates of persons dying insolvent. Can the court then, by construction, annex to, or insert into, the statute of limitations, an exception to its operation, which the legislature never thought of; and that too, simply on the ground that they probably would have done so, if they had thought of it? Can we say, that by the law of the land, as we find it, if a man dies after a cause of action has arisen against him on a promise, the promisee may bring his action on that promise, at a period, more than six years after his right of action accrued? If we can, we must lay down rules to meet the various circumstances under which similar cases may come before us.

Suppose then, the debtor should die five years eleven months and twenty-nine days after the cause of action accrued, or at any earlier period; shall we say that in all such cases, the six months shall be added to the six years; or that the creditor shall

only have as much time after the expiration of the six months, as he had at the time of the death, if the debtor had lived? Again, suppose the debtor should die at such a period after the cause of action arose, that after waiting the six months, there will be some time left within the six years, say a month, a week or a day; shall the creditor commence his suit within such month, or year or day? Or shall he still be entitled to six months after the expiration of the six years, on the ground that he had been so long restrained by the act?

By adopting one rule, we should, in all such cases, permit suits to be commenced, six years and six months after the cause of action accrued; and by the other, we should make it depend upon the period within the six years, when the debtor died. In some instances, creditors would have but five years and six months at most, within which they were at liberty to commence their suits.

Once more; suppose the party should die, a month or other short period, before the action accrues; when shall the statute commence running? As soon as the cause of action accrues, or not till six months after the decease of the debtor?

These are questions that must be settled if we adopt the plaintiff's argument; and perhaps there are others. We can, no doubt, lay down just and equitable rules if we are at liberty to do so, but I fear it would lead us into a course of judicial legislation altogether unwarranted, if not unexampled.

It is probable that the legislature, if it had occurred to them, when they passed the act of June, 1820, would have saved to plaintiffs, in such cases, the six months, during which they restrained them from suing executors or administrators. But the legislature had a right to abridge the time in such cases, if they thought proper—they have done so in fact; and the court has no evidence they did not intend to do so.

Our statute of limitations in regard to personal actions, is identical with 21 *Jac.* 1, except in reference to persons beyond seas, and so far as relates to specialties and non resident debtors; and the general rules of construction in the English courts, in respect to personal actions, have been fully adopted and uniformly acted on in this state. Mr. *Griffith's Law Reg. vol.* 4, 1265, *n.* 2.

The course of decisions, both in England and in this country, has established the rule beyond doubt, that when the statute has commenced running, it runs over *all* subsequent disabilities and intermediate acts and events. *Stowel* v. *Lord Zouch.* 1 *Plowd.* 375; *Doe* v. *Shane*, 4 *T. R.* 306, *in note*; *Hickman* v. *Walker, Willes Rep.* 27, and cases there cited. *Smith* v. *Hill*, 1 *Wilson's Rep*, 134; *Walden* v. *Gratz*, 1 *Wheat. Rep.* 292; *Hall* v. *Wybourn*, 2 *Salk.* 420; *Jackson* v. *Robins*, 15 *Johns. Rep.* 171.

In *Peck* v. *Randall*, 1 *Johns. Rep.* 176, Chief Justice Kent, says, he knows of *nothing* that will suspend the course of the statute, after it has begun to run; and the same learned jurist, afterwards, as chancellor, in the cases of *Demarest* v. *Wynkoop*, 3 *Johns. C. R.* 129, and *Moores* v. *White*, 6 *Johns. C. R.* 360, reviews the authorities and establishes the rule in equity, as well as at law.

In short, if courts of justice are shut up in consequence of war, rebellion, revolution or usurpation of government, it constitutes no bar to the statute of limitations. 4 *Bac. Abr.* 480, *tit. Stat. Limitations, pl.* 6; 2 *Salk.* 420.

Hence it was, that the statute of 1 *Wm. & Mary*, was passed; by which it was enacted, that the period between the departure of King James, and the assumption of the government by King William, should not be accounted as part of the time mentioned in the statute of limitations.

There is no distinction between a disability or impediment on the part of the plaintiff, and when it arises from some change or event that has happened to the debtor. 15 *Johns. Rep.* 171. Nor is there any difference between a voluntary and involuntary disability. *Doe* v. *Jones*, 4 *T. R.* 301.

The plaintiff's counsel, on the argument, cited and relied much on the case of *Burnet* v. *Bryan's administrators*, decided in this court in 1797, and reported in 1 *Halst.* 377; in which it was held, that if a debtor dies after the cause of action has accrued, the statute will cease to run till letters of administration are taken out, notwithstanding there may be an executor *de son tort;* because there is no person against whom the plaintiff is *bound* to bring his action.

I should think, that if the debtor removed or withdrew him-

self from the state, perhaps on purpose to avoid a suit, it ought with greater reason, to suspend the operation of the statute during his absence. And yet, no court has gone the length of such a decision: and therefore, the legislature passed the act of February, 1820, expressly excepting out of the statute, the period of such absence. Such legislative interference would have been unnecessary, if the court, by judicial and equitable construction, could mould the statute to suit what might seem to be the justice of the case.

There are cases arising upon remedial and other statutes, where the court will enter into the spirit of the legislature, in order to give effect to the plain and manifest intent of the statute, and where a strict adherence to the letter, would defeat that intent. *Kent's Com.* 1 *vol.* 434.

Indeed, there are cases of that kind arising upon the statute of limitations itself. The action of assumpsit is not named in the clause in the *Stat. of* 21 *Jac.* 1, which saves the rights of infants; but an action on the case for slander is. Yet assumpsit is held to be within the clause; as it would be unreasonable to suppose that Parliament would preserve to the infant, the trifling and vindictive action for slander, and omit the important action of assumpsit.

But in respect of time, the statute of limitations is a positive enactment, laying down a plain, unequivocal rule for our government. The object the legislature had in view, was not to give time, but to restrict and limit the period within which suits should be brought. In 1 *Plowd.* 375, before cited, it is said, " the party should not be aided at all by equitable considerations, inasmuch as the universality of mankind is more the object of the purview than individuals; that is to say, it respects the peace of all men in general more than the advantage of infants or other private persons ; and also, inasmuch as this is a positive law for the *time ;* and therefore, when it has particularly limited divers *times,* &c. to make an alternation in that time would be more contrarient, than agreeable to, the minds of the makers of the act. *Equitas est correctio justæ legis, qua parte deficit quod generatim lata est.* But the law here is special, and limits a certainty of time in every part, and it is defective in

Dekay *v.* Darrah.

no part as to time : for which reason the *time* limited shall not be enlarged or altered by equity."

But the case of *Burnet* v. *Administrators of Bryan*, 1 *Halst.* 377, requires a more respectful consideration. The court, in that case, bottom their opinion on the authority of *Joliffe* v. *Pitt*, 2 *Vern.* 694. Joliffe, the plaintiff, and Whistler, his debtor, were both in Turkey, in the year 1689, when the money was lent. Joliffe continued there till 1702, and Whistler, till 1706, when he died, leaving Pitt, his executor, who also then resided in the Indies. Pitt came to England, and proved the will in 1710, and Joliffe filed his bill in 1714. Pitt did not set up the statute of limitations, but other defendants who were creditors, did. The lord chancellor was of opinion that the statute did not take place ; and certainly it did not. For, while Joliffe was in Turkey, his rights were saved by the fourth section of the *Stat. of* 21 *Jac.* 1 ; and while Whistler, and after his death, his executor, Pitt, remained beyond seas, the action was saved by 4*th* & 5*th Ann.* But it is said in the case, " that laches could not be attributed to Joliffe for not suing while there was no executor." And this is the point relied on. Whether this remark was made by the chancellor, or by counsel, or whether it is the language of the reporter, is matter of uncertainty ; but by whomsoever made, the remark was a just one ; but it is a very different thing from saying that if the statute has commenced running, it will stop when the creditor or debtor dies, and be infinitely suspended until probate, or letters of administration are taken out. No such decision is, I believe, to be found in the English books : and yet, it is upon the authority of this case, that the court, in *Burnet* v. *Bryan*, decided, that the statute ceases to run until there is some person whom the creditor is bound to sue. It is true, the court speak of that case, as having been recognized and confirmed, but they refer to no authorities. The counsel for the plaintiff in that suit, cited 1 *Eq. ca. abr.* 305, and 4 *Bac. abr.* 480. But those abridgments refer only to the case of *Joliffe* v. *Pitt ; Cary & ux* v. *Stephenson.* 2 *Salk.* 421, was also cited ; but is certainly not in point. The cause of action was never in the intestate ; the defendants received the money belonging to the intestate's estate after his

Dekay *v.* Darrah.

death, and before administration, and the court held, that the administrator's title commenced when he obtained letters of administration, and that he had six years from that time, to bring his action.

In *Webster* v. *Webster*, 10 *Vesey.* 93, the lord chancellor seems to adopt the idea that the statute cannot be pleaded, but contrary to the decision in *Burnet* v. *Bryan*, he maintained the plea in that case, because there had been an executor *de son tort*, who might have been sued. But the point was not debated, and the case is very shortly reported.

It is evident that in the case of *Burnet* v. *Bryan*, the court were under the influence of very strong equitable feelings, in favor of the plaintiff ; they declare the defence, under the peculiar circumstances of that case, to be an unrighteous one, and ascribe the plaintiff's delay, to the most liberal and praiseworthy motives. Upon the whole, I should not feel myself strongly bound by that decision, even if it was directly in point, which I think, is not the case. It may be referred to that class of cases in which, by some unforseen and providential event, not contemplated by the legislature, the party has been prevented from proceeding, and where the court, by the equity of the saving clauses in the statute, will preserve his rights. See *Ballantine on Lim.* 163, &c. So where the executor takes out process within a year after the death of the testator, provided the statute has not run out in the testator's life time, *Cawer* v. *James, Bul. N. P.* 150. So where an executor brings action in time, and dies before judgment, and after six years run out, a new action may be commenced by his executor within a year. 1 *Eq. ca. abr.* 305, *pl.* 11, in margin.

If a party has been restrained by injunction out of Chancery, till the statute has run out, and afterwards sues at law, the statute will be a good defence ; but the Court of Chancery in such case, may restrain the defendant from pleading the statute. 4 *Bac. abr.* 481; 2 *Chan. cas.* 217.

The case under consideration is of a different character ; the disability is a legislative one ; the same power that limited the action ordinarily to six years, has taken away the right of suit for six months, in some cases. We have then, two positive enactments ; one, that an action on promises, shall be commenced

within six years after the cause of action has accrued, " and not after ; " and another, that an executor or administrator shall not be sued until after six months from the death of the testator or intestate.  It was competent for the legislature, either to have excepted this six months out of the statute of limitations, or to have confined the prohibition to cases, where the statute would not run out.  They have done neither ; and shall we add a clause to the statute ?  Both acts may stand, and no injustice be done, for the law does wrong to no man.  But if we do interfere, which statute shall we ride over ?  Shall we make this .case an exception to the statute of limitations, or shall we restrict the act of June, 1820, to cases where the statute will not interfere ?   We have as much power to do the one as the other, and the equity is the same.

FORD, J. concurred.

CITED in *Cowart* v. *Perrin,* 6 *C. E. Gr.* 102.