JOHN ROSS, APPELLANT, v. BOARD OF CHOSEN FREE-
HOLDERS OF THE COUNTY OF HUDSON, RESPOND-
ENT.

Submitted March 30, 1917—Decided October 11, 1917.

Plaintiff, who held a position in the county jail under the provisions
of the Civil Service law, having been dismissed by the sheriff
in violation of such provisions, brought his suit for damages
against the board of chosen freeholders and was denied recovery
upon the doctrine of *Stuhr* v. *Curran*, 44 *N. J. L.* 181. *Held*,
that as the relation between plaintiff and defendant was con-
tractual in character, it was error to apply to it a doctrine that
applied only to those who were part of a governmental depart-
ment, to wit, officers, and not to those employed by such depart-
ment. *Held also*, that the relation of the parties bound the de-
fendant to the observance of the pertinent provisions of the Civil
Service law, and that such implied contract was broken by the
defendant when the sheriff as its agent dismissed the plaintiff in
violation of such provisions.

On appeal from the Supreme Court.

The following decision was rendered by the Circuit Judge:

"This case is, by consent, tried before me without a jury
on a stipulated state of facts.

"Plaintiff was employed as a guard in the Hudson county
jail. His employment was under and subject to the Civil
Service laws of the State of New Jersey. The sheriff of
Hudson county dismissed plaintiff from his position without
alleging any reason, without a hearing, and contrary to law.
The state civil service commission refused to sustain the
sheriff's said action on the ground that it was improper and
illegal and held that the plaintiff should be permitted to per-
form his duties as such guard, and plaintiff thereupon was
allowed to perform his duties. It is stipulated that plaintiff's
dismissal was contrary to law, and that he duly and regularly
reported for work, and was at all times ready and willing to

perform the duties of his said employment, but that he did not perform the same. It is also stipulated that plaintiff was prevented by the then sheriff of Hudson county from rendering any services as such guard in said Hudson county jail from November 30th, 1911, up to March 19th, 1913, for which period he sues herein to recover his salary.

"There is no question made by either side but that a guard in a county jail holds a position (*Cavanagh* v. *Essex County*, 58 *N. J. L.* 531) ; nor is there any doubt that 'a position is analogous to an office, in that the duties that pertain to it are permanent and certain, but it differs from an office, in that its duties *may* be non-governmental and not assigned to it by any public law of the state.' *Fredericks* v. *Board of Health*, 82 *Id.* 200. There is no doubt either but that one who becomes a public officer *de facto* without dishonesty or fraud on his part, and who renders the services required of such public officer, may recover the compensation provided by law for such services during the period of their rendition. *Erwin* v. *Jersey City*, 60 *Id.* 141. It follows that he, the *de facto* officer, is entitled to the compensation. *Ibid.* 150. It was decided in that case that the *de facto* officer, who actually performed the services, was entitled to the compensation, and that the *de jure* officer who had not performed them was not entitled to it. This conclusion is abundantly supported by the cases of *Stuhr* v. *Curran*, 44 *Id.* 181; *Uffert* v. *Vogt*, 65 *Id.* 377, and *Hoboken* v. *Gear*, 27 *Id.* 265, 278.

"The question for decision in this case is whether the cases above cited are applicable to the case now *sub judice* or whether the case of John Boylan, appellee, *v.* Mayor and Aldermen of Jersey City, submitted March 25th, 1914, and decided June 23d, 1914, by the New Jersey Supreme Court, is applicable. The opinion in the latter case, which is short, was as follows:

" '*Per curiam:* The appellee was employed in the street department of Jersey City at $65 a month. On August 17th, 1912, he was suspended and later was tried and dismissed. On appeal the civil service commission adjudged that he was

illegally dismissed and ordered his reinstatement; and on January 1st, 1913, he was in fact reinstated. This suit is for $65 a month from August 17th, 1912, to January 1st, 1913, less what the appellee was able to earn. Judgment was given for appellee for the amount claimed. This was right. It is not the case of an office or position, but of a mere employment. *Fredericks* v. *Board of Health, supra.* The action was based on an unlawful discharge. If there had been a contract for a fixed term, say one year, judgment would unquestionably be founded on a sound legal principle. In our opinion the tenure of office created by the legislative policy of the Civil Service act takes in legal theory the place of such contract, and hence by analogy the discharged employe when reinstated by the civil service commission recovers upon the principle of an unlawful discharge, in which action under the civil service rule the technical difference between damages and wages does not arise. If this is not so, a mere suspension, however unlawful, will accomplish all that a lawful dismissal could and the civil service be thereby entirely emasculated.

" 'The judgment of the First District Court of Jersey City will be affirmed.'

"I think that the cases first cited, notably that of Erwin v. Jersey City and Stuhr v. Curran, are applicable, and that the case of Boylan v. Jersey City is inapplicable. It must not be overlooked that the court in pronouncing the opinion in Boylan v. Jersey City took particular pains to differentiate that case from one in which the case of an office or position was in question and planted its decision firmly upon the ground that the case then before it was one of mere employment, thereby indicating that if the case had been one of office or position the result would in all likelihood have been different. Further, it cannot be denied that if the case were one of office the defendant is entitled to prevail, and it seems to me that the analogy between an office and a position pointed out in *Fredericks* v. *Board of Health, supra,* and the fact that in this case the employment of the plaintiff was, in the light of the decisions, and by the nature of plaintiff's

duties and functions, and the source from which they emanated, of such a character as to make the analogy between it and an office too close to be overlooked or to work any difference in the adjudication that should be made in the case in hand.

"The above results in my finding in favor of the defendant and against the plaintiff in the present action."

For the appellant, *Charles M. Egan.*

For the respondent, *James J. Murphy.*

The opinion of the court was delivered by

GARRISON, J.    The court below, having rightly decided that the plaintiff held a position, and not an office, erred in denying his cause of action upon the doctrine of Stuhr *v.* Curran, which is applicable solely to an office and not at all to a position.    The analogy which was supposed to justify the extension of this doctrine to the holder of a position is limited to certain of the qualities appertaining to the duties of both an office and a position, viz., their permanence and certainty; but, as was pointed out in *Fredericks* v. *Board of Health,* all analogy is lacking with respect to the obligation to perform such duties as are non-governmental, which is precisely the ground upon which the doctrine of Stuhr *v.* Curran is founded.    No analogy can bridge the distinction established by that case between an office and a position or any other form of public employment.    Every person engaged in the civil service is either part of a governmental system or he is employed to forward the work of such system; if the former, he is an officer to whom the doctrine of Stuhr *v.* Curran applies; if the latter, he is an employe to whom such doctrine does not apply.

The division of such employes into those holding positions and those having a mere employment, is one of convenience only, which, having been adopted by the legislature, has called forth judicial definition, but, generically, and for the appli-

cation of judicial doctrines, there are but the two classes mentioned, viz., those who are part of the government and those who are employed by it. Between these two one of the fundamental differences declared by the decision, in Stuhr *v.* Curran, is that as to the former all idea of a contract is excluded, whereas an employment, whatever may be its grade, connotes in some form the contractual relation of master and servant. A test, therefore, of the applicability of the doctrine of Stuhr *v.* Curran, is whether the relation of the parties is in legal contemplation that of master and servant; if it is, the doctrine peculiar to offices cannot be applied to it.

Now, it is settled law that the appointment of the plaintiff as a guard in the Hudson county jail by the then sheriff created between the plaintiff and the defendant, the board of chosen freeholders, the relation of master and servant. *Sullivan* v. *McOsker,* 84 *N. J. L.* 380.

The position involved in that case was that of jail warden, and the crucial question was whether or not the appointment by the sheriff constituted such appointee an employe of the county, the Supreme Court having held, following the case of *Kelly* v. *Arbuckle,* 78 *N. J. L.* 94, that the appointment by the sheriff did not have that effect. *Sullivan* v. *McOsker,* 83 *Id.* 16.

In reversing this decision of the Supreme Court, this court, speaking through Mr. Justice Kalisch, said:

"As soon as the sheriff selects and employs assistants they become the servants of that municipality for whom the sheriff is acting as the agent."

It being thus settled in this court that a contractual relation existed between the plaintiff and the defendant, it follows necessarily that it was error to apply to such a relation the doctrine of *Stuhr* v. *Curran,* from which all idea of a contractual relation is excluded.

This disposes of the main question argued upon the present appeal, but, inasmuch as the case cited also disposes of certain subsidiary questions, two further excerpts from the opinion in that case will be quoted: "The fact that the county pays the warden for such services out of the county funds makes

him an employe in the service of the county, and *therefore within the protection of the Civil Service law.*

"It must be borne in mind that the object of the legislature was to secure by means of the Civil Service law efficient public service in the state institutions and in the governmental departments of this state. Therefore, in applying this statute to any particular given case *the court must above all* recognize and enforce the broad public policy which underlies it."

This means that in the given case before us the observance by the defendant of the provisions of the Civil Service law must be read into its contract with the plaintiff, and that for a breach of the contract thus constructed the defendant may be held liable for damages. *Boylan* v. *Jersey City.*

That the dismissal of the plaintiff by the sheriff in violation of the Civil Service act constituted such a breach is the necessary corollary of the decision that the acts of the sheriff within his delegated authority as agent for the board of freeholders are binding upon the board of freeholders. Apart from the decided case this must be so upon general principles, since there is no question that the legislature made the sheriff the agent of the county in these respects, and there can be no question that in dealing with its governmental agencies the legislature may by general laws distribute authority among them and impute the responsibility for its exercise as it sees fit.

The case cited also puts at rest any question, if there can be any, arising from the circumstance that when the plaintiff in the present case was dismissed in 1911, the law as then declared by the Supreme Court in the Arbuckle case imposed no liability therefor upon the county. For the decision in the case cited was made not only in the face of the Arbuckle case, but also in the face of the concrete decision of the Supreme Court in that very case itself. To judicial decisions thus reversing judgments previously rendered or overruling older decisions, the rule of legislative enactments has no application. What a court declares to be the law always was the law, notwithstanding earlier decisions to the contrary.

Such earlier decisions may indeed be cited elsewhere than in a court of justice in extenuation of unlawful acts that were apparently lawful at the time of their commission, but such considerations have no place in judicial determinations as to the legal liability for such acts with which alone we are now concerned.

From this it follows that the fact that the defendant relying upon judicial decisions paid for the services rendered by the person whom the sheriff put in the position from which he had unlawfully dismissed the plaintiff has no greater legal significance than similar payments would have if made by an individual or by a private business concern under like circumstances. For the hardships arising from the mistakes of courts the law has never undertaken to provide a remedy or to afford redress.

The question of damages was not reached in the court below, and hence is not raised on this appeal. The case must be retried upon the unlawful discharge theory under the rules as to the measure and mitigation of damages appropriate to that branch of the law of contracts.

The judgment of the Supreme Court is reversed and a *venire de novo* awarded.

*For affirmance*—THE CHIEF JUSTICE, WHITE, TAYLOR, JJ. 3.

*For reversal* — THE CHANCELLOR, GARRISON, SWAYZE, TRENCHARD, PARKER, BERGEN, MINTURN, KALISCH, BLACK, HEPPENHEIMER, WILLIAMS, GARDNER, JJ. 12.