At the same time that an application for the issuance of a commission in the nature of a writ de lunatico inquirendo was filed in the above-stated cause, an application was made for the appointment of a receiver to take charge of the business and affairs of the defendant pendente lite. The petition for the commission and appointment of a receiver was a joint one, made by the wife of the alleged lunatic. This was irregular. There should have been a straight petition for a commission and another for a receiver. However, this is mere matter of form, which the court waived.
The petition showed that Harris, the alleged lunatic, was seized of considerable property, real and personal, and very properly averred that, pending the determination as to his *Page 6 
sanity and the appointment of a guardian, a receiver should be appointed to take charge of his property and affairs.
On December 21st, 1926, an order was made for a commission, and another order was made appointing Herbert S. Killie, Esquire, temporary custodial receiver until the further order of this court, of the lands and tenements, moneys and effects of the alleged lunatic; and Mr. Killie was directed, before entering upon his duties, to give bond to the chancellor in the sum of $10,000, conditioned for the faithful performance of his duties, to be approved, c. That bond was given and approved, and remains on the files of this court.
This bond was given by Mr. Killie as principal, and the American Surety Company of New York, a corporation, as surety. It runs to the chancellor and his successors in office, which is proper (and should run to his "assigns" also), and provides that for that payment well and truly to be made they bind themselves, their heirs, executors, administrators, successors and assigns, jointly and severally, firmly by those presents, sealed with their seals, dated, c. Now, it should run to the chancellor's "assigns" as well; but how anybody can bind "assigns" to assume liability for the default or miscarriage of another I do not well see. Certainly, not without a contract charging the parties to be bound; but this provision may be void without in anywise avoiding the validity of the bond. Of course, an obligation should run to an obligee and his assigns, for he may assign the obligation, and the assignee may sue upon it; but its omission does not impair any obligation of the obligors, but how assigns can be bound to answer I do not quite see. I do not see how any obligor can say, "I assign by liability to A.B. and he shall pay my obligation." This, however, is beside the question before the court.
The condition of the bond is that if Killie shall, and do, as required by law and the rules and practice of the court of chancery, duly file an inventory, duly account for what he shall receive or have in charge as such receiver, and pay and apply what he shall so receive or have in charge, as from time to time directed by the court, and obey such orders as the court may from time to time make in relation to such trust, *Page 7 
and in all things well and truly fulfill and discharge the duties of such office of receiver, then the obligation to be void, otherwise to remain in full force and effect.
On January 19th, 1927, the commission was executed and office found. Subsequently, a decree was made and a transcript of the proceedings was sent down to the orphans court of Burlington county, which, on February 19th, 1927, appointed the Mount Holly Savings and Trust Company guardian of the lunatic, who duly qualified as such.
And now the receiver appointed under the order of December 21st, 1926, has filed his report and turned over to the guardian, so appointed, all the property and effects of the lunatic, of which he, the receiver, had been possessed; and, potentially, that of which he assumed authority, management or control. The petitioner prays that an order may be made herein relieving him from further duties as such receiver, and discharging him from all further obligations whatsover in connection with his appointment as receiver, and that his bond heretofore filed in accordance with the order of his appointment may be canceled andfor nothing holden.
A bond is a contract by specialty, and the statute of limitations does not run against it until the lapse of sixteen years from a breach.
In 2 Bl. Com. 465, it is laid down that debts by specialty, or special contract, are such whereby a sum of money becomes, or is acknowledged to be, due by deed or instrument under seal, such as by bond or obligation, and creation or acknowledgment of a debt from the obligor to the obligee, and unless the obligor perform a condition thereunto usually annexed, or the observance of a covenant, and the like, on failure of which the bond becomes forfeited and the debt becomes due in law.
By our statute of limitations (3 Comp. Stat. p. 3162 § 6), action on such a specialty shall be commenced and sued within sixteen years next after the cause of such action shall have accrued, and not after.
At the time of the discharge of the receiver the court will not vacate his recognizance even upon the consent of all parties; nor shall sureties on the bond be discharged upon *Page 8 
their own request. 2 Tardy's Sm. Rec. 2071 § 766; see, also,Fitzgerald v. Hill, 2 Ir. Eq. Rep. 398.
 Griffith v. Griffith, 2 Ves. Sr. 400, was a petition to remove a receiver, the two sureties joining in the petition. The lord-chancellor observed that if people voluntarily made this bail or surety for another, they know the terms, and will be held very hard to their recognizance, and not discharge at their request to have new sureties appointed, for then there would be no end of it. No regard therefore is due their application, unless for the benefit of the parties in the cause or something of that kind.
When a public officer has received public money, those who are bound for him at the time it came into his hands are responsible until he duly disburse or pay it over. Freeholders v. Wilson,16 N.J. Law 110.
On the discharge of a receiver the surety is still liable for any default he may have made during the administration of his trust. And this may be afterwards discovered.
To cancel a bond and to adjudge that it will be for nothing holden is a thing which a court should never do. And after-discovered dereliction as a cause for suit is a contingency so remote as to be practically negligible; and the surety, or surety company, may, after the discharge of a receiver, and properly could, and doubtless would, charge off the liability on the account and consider it at an end; but the court has no judicial power to arbitrarily terminate it. The bond may still possibly have to answer. I repeat, a bond is a specialty and an obligor makes himself liable for sixteen years after breach, and properly so.
If a surety company (which charges a premium or premiums upon a bond which the fiduciary relationship is running), after the discharge of the fiduciary, insists upon charging the premium unless the bond is absolutely discharged and for nothing holden, it occupies a singular advantage, one to which it is not entitled.
If there be any insistence by a surety company for the payment of further premiums, which the receiver or other fiduciary does not have, by reason of accounting and turning over the property to a guardian or other authority, or insists *Page 9 
upon the absolute cancellation of its bond, which it cannot have, this tribunal will see to it that that company is not permitted hereafter to become surety on any other bonds given in this court.
The receiver in this case is a man of probity and high standing, and no reflection whatever is intended to be cast upon him by this decision. It is, however, called for by a constantly increasing trend of similar applications, made on behalf of surety companies.
An order will be made discharging the receiver and fixing his compensation; but will contain no provision canceling the bond or rendering it in anywise for nothing holden; as a specialty it is subject to the law of specialties, and must so remain.