MARY A. MILLER, ADMINISTRATRIX OF THE ESTATE OF ADOLPH MILLER, DECEASED, AND DOROTHY MARIE HINNERS, ADMINISTRATRIX OF THE ESTATE OF HERMAN C. HINNERS, DECEASED, PLAINTIFFS-RESPONDENTS, v. BOARD OF CHOSEN FREEHOLDERS OF THE COUNTY OF HUDSON, DEFENDANT-APPELLANT.

Argued September 22, 1952—Decided October 20, 1952.

*Mr. Frederick J. Gassert* argued the cause for the appellant (*Mr. Daniel T. O'Regan,* attorney).

*Mr. Thomas J. Brogan* argued the cause for the respondent (*Mr. Isadore Glauberman,* of counsel; *Mr. Louis Steisel,* attorney).

The opinion of the court was delivered by

BURLING, J. This is a suit for municipal employees' unpaid compensation. It was instituted in the Hudson County Court against the defendant Board of Chosen Freeholders of the County of Hudson (hereinafter referred to as Hudson County), by the plaintiffs, Mary A. Miller, administratrix of the estate of Adolph Miller, deceased, and Dorothy Marie Hinners, administratrix of the estate of Herman C. Hinners, deceased, and resulted in a judgment for the plaintiffs upon a jury verdict. The defendant Hudson County

appealed to the Superior Court, Appellate Division, which affirmed the judgment. *Miller v. Bd. of Chosen Freeholders of the County of Hudson*, 16 *N. J. Super.* 457 (*App. Div.* 1951). Thereupon the defendant petitioned this court for certification, which was allowed. 9 *N. J.* 178 (1952).

Adolph Miller was employed by Hudson County, as a temporary prison guard from June 8, 1931 until May 1, 1935, and as a permanent prison guard from May 1, 1935 until his death on May 6, 1939, at the Hudson County Jail. His employment was effected by appointment by the Sheriff of Hudson County. Mary A. Miller, his widow, qualified as administratrix of Adolph Miller's estate on June 14, 1949.

Herman C. Hinners was employed as a prison guard by the same county at the same jail, also having been appointed by the sheriff of the county, from June 26, 1930 until his death on January 4, 1941. Dorothy Marie Hinners, his widow, qualified as administratrix of his estate on January 10, 1941.

On March 30, 1938, *chapter* 54 of the *Laws of* 1938 (*N. J. S. A.* 40:21–80 now incorporated in *N. J. S. A.* 30:8–13.1) became law. This statute provided as follows:

"BE IT ENACTED BY THE SENATE AND GENERAL AS-SEMBLY OF THE STATE OF NEW JERSEY:

1. In all counties of the first class in this State the guards, keepers and industrial officers employed in the jails, houses of detention and penitentiaries shall receive the minimum compensation of two thousand dollars ($2,000.00) per annum and the maximum compensation of three thousand dollars ($3,000.00) per annum. The salaries of such employees hereafter appointed shall commence at said minimum and shall be increased two hundred dollars ($200.00) per annum for each year of service thereafter, not to exceed the maximum herein established. All such employees now in service shall on July first following the passage of this act be entitled to receive an increase of two hundred dollars ($200.00) over his or her present salary and on July first in each year thereafter shall be entitled to a further increase of two hundred dollars ($200.00) not to exceed the maximum herein established.

2. All acts or parts of acts inconsistent herewith be and the same are hereby repealed and this act shall take effect immediately."

On the effective date of the foregoing statute Adolph Miller and Herman C. Hinners were each receiving a salary of $1750 per annum and their salaries, respectively, continued at that rate until their respective deaths, no provision for the statutory salary increase being effected by Hudson County. Neither Miller nor Hinners made any demand for the statutory salary increase; both without objection signed payrolls and accepted and endorsed salary checks based upon the annual salary rate of $1750.

After the deaths of their respective decedents neither of the plaintiffs made any demand upon Hudson County for the sums allegedly due their intestates until shortly before the institution of suit. The action was initiated by complaint joined in by four plaintiffs, *sub nom. Miller v. Bd. of Chosen Freeholders of the County of Hudson*, in the Hudson County Court (Docket No. 56615) in August, 1949. The court ordered a severance of that case and directed the two plaintiffs in the present cause to file a new complaint. This was done by the plaintiffs on April 3, 1950, instituting the present action. The other two plaintiffs continued to press their action under the original complaint. The resulting judgment therein has been reviewed by this court, see *Long v. Bd. of Chosen Freeholders of the County of Hudson*, 10 *N. J.* 380, 91 *A.* 2d 724, decided at this term, and our opinion therein is being filed concurrently herewith. Hudson County asserted several defenses to the action of plaintiffs Miller and Hinners. For the purposes of the present appeal we advert to three of those defenses, namely, waiver, laches and the six-year statute of limitation, *R. S.* 2:24–1. At the trial of the cause Hudson County moved for judgment in its favor, *inter alia* on the grounds that, as a matter of law, the action was barred by laches and by *R. S.* 2:24–1. The motion was denied; it was renewed at the close of the defendant's case, and again denied by the trial court. Plaintiffs then moved to strike the special defenses of laches and limitation and their motion was granted. The question of waiver was submitted to a jury, which brought in a verdict

for the plaintiffs (the amount involved had been stipulated) and judgment was entered thereon.

Hudson County appealed from the adverse judgment of the trial court, and its adverse rulings on Hudson County's motions for judgment, to the Superior Court, Appellate Division. The Appellate Division held that factually laches was absent as a matter of law, and that the defense of the statute of limitation was not available to the defendant for the reason that the plaintiffs' claims were based upon a statutory direction and therefore not barred by the asserted statute of limitation. 16 *N. J. Super.*, at *p.* 461. As hereinbefore stated, Hudson County petitioned this court for certification to the Superior Court, Appellate Division, to review the resultant judgment of affirmance and its petition was granted, 9 *N. J.* 178 (1952) resulting in the present appeal.

There are two questions involved on this appeal, namely: (a) whether the six-year statute of limitation, *R. S.* 2:24–1, is applicable, and (b) whether the plaintiffs are in laches. We deem the first question dispositive for the reason that *R. S.* 2:24–1 is applicable and constitutes a bar to plaintiffs' action, and we therefore express no opinion as to the pertinency of the defense of laches under the circumstances of this case.

■ A statute of limitation is one of repose, the generally accepted rule here and elsewhere being that a statute of this class operates *on the remedy* merely and does not extinguish the right, *State v. Standard Oil Co.,* 5 *N. J.* 281, 295 (1950); *Chase Securities Corporation v. Donaldson,* 325 *U. S.* 304, 65 *S. Ct.* 1137, 89 *L. Ed.* 1628 (1945). Although the fact that the practical result of the operation or application of the statute is a deprivation of the right is an accepted doctrine, *State v. Standard Oil Co., supra* (5 *N. J.*, at *p.* 294); *Moore v. State,* 43 *N. J. L.* 203 (*E. & A.* 1881).

■ As a general rule the claim or suit must come clearly within one of the provisions of the statutes of limitation before it is barred, for such a preclusion of action may not be extended by analogy from one subject to another. 53 *C. J. S.,*

*Limitations of Actions*, sec. 33, p. 981. Compare *State v. Standard Oil Co., supra* (5 *N. J.*, at *pp*. 299–303) ; *Baur v. Common Pleas of Essex,* 88 *N. J. L.* 128, 131 (*Sup. Ct.* 1915) ; *Outwater v. Passaic,* 51 *N. J. L.* 345 (*Sup. Ct.* 1889).

While under some statutes of limitation it is the form of action and not the cause of action which fixes the bar, under other statutes, especially where the forms of action have been abolished, it is the nature of the substance of the cause of action, rather than the form which determines the applicability of the statute. 53 *C. J. S., Limitations of Actions,* sec. 33, p. 982; *cf. State v. Standard Oil Co., supra* (5 *N. J.*, at *pp*. 299–303). Our general statutes of limitation are of ancient origin and as a consequence the provisions thereof must be construed or applied with full understanding of both the form and substance of the actions they were designed to bar. Indeed, although pleading has been simplified, this process has not destroyed the basic elements of any given claim which constitute it the substantive right, the subject of a civil action. *Grobart v. Society for Establishing Useful Manufactures,* 2 *N. J.* 136, 151–152 (1949) ; *Anderson v. Modica,* 4 *N. J.* 383, 392–393 (1950) ; *Kelly v. Hoffman,* 137 *N. J. L.* 695, 698 (*E. & A.* 1948) ; *Hand v. Hand,* 23 *N. J. Misc.* 118, 121 (*Cir. Ct.* 1945) ; *Kalin v. Crispel,* 22 *N. J. Misc.* 394, 395–396 (*Cir. Ct.* 1944). The historic sources of our principal New Jersey statutes of limitation are the English statutes of 32 *Henry VIII, c.* 2, and 21 *Jac. I, c.* 16. In early Colonial days these statutes were not considered as extending to this country, but by parliamentary act in 1727 it was declared that the English statutes of limitation should be in force here. *Johnson v. Morris,* 7 *N. J. L.* 6, 11 (*Sup. Ct.* 1820). Our early statute of limitation in regard to personal actions was held to be "identical with 21 *Jac. I*" (except for differences not germane to the matter now before us), and it was also held that "the general rules of construction in the English Courts * * * have been fully adopted and uniformly acted on in this

state." *DeKay v. Darrah,* 14 *N. J. L.* 288, 293 (*Sup. Ct.* 1834).

The principal issue in the present appeal is the construction and application of *R. S.* 2:24–1, termed our six-year statute of limitation. (We do not concern ourselves with the recently enacted revision, the comparable section of which, *N. J. S.* 2A:14–1, is couched in somewhat different language from that of the subject statute in view of the fact that the present statute became effective in January 1952, considerably subsequent to the date of inception of this suit).

*R. S.* 2:24–1, so far as pertinent hereto, reads as follows:

"All *actions in the nature of* * * * *debt, founded upon a* lending or *contract without a specialty* * * *, actions in the nature of actions upon the case* * * * shall be commenced within six years next after the cause of any such action has accrued. * * *" (Italics supplied).

The pertinent portions of 21 *Jac. I, c.* 16, were contained in *section* 3 of that ancient English enactment in the following language:

"* * * All *actions* of account, and *upon the case,* other than such accounts as concern the trade of merchandise between merchant and merchant, their factors or servants; *all actions of debt, grounded upon any* lending or *contract without specialty,* * * * shall be commenced and sued within the times hereinafter expressed, and not after; that is to say, the said *actions upon the case* * * *, debt,* * * * within six years next after the cause of such actions or suit, and not after; * * *." (Italics supplied). I *Tidd's Practice* (3rd. Am., from 9th London ed., 1840), p. 14.

■ That an action in *assumpsit* is within the bar of our six-year statute of limitation is well settled. This was recognized in *Stale v. Standard Oil Co., supra,* (5 *N. J.,* at *pp.* 299–302), although in that case the substance of the specific right there in question was held to be the equitable enforcement of a trust and for that reason not within the bar of the statute.

The action of *indebitatus assumpsit* was one favored in law, and it was early settled that "generally, whenever a

certain sum of money, or a sum, that may be rendered certain, is to be paid, upon the performance of a special agreement, or the happening of a certain event, it may be recovered in this form of action, if the agreement has been executed, or the event taken place. * * *" *Glover v. Collins,* 18 *N. J. L.* 232, 234 (*Sup. Ct.* 1841). And this was a form of action on the case. *Bunting ads. Allen,* 18 *N. J. L.* 299, 303 (*Sup. Ct.* 1841). The plaintiff in *assumpsit,* in an action for services rendered, could proceed on the common counts of *indebitatus assumpsit* and on special counts based on special contract, being entitled to recover under the former where his proofs supported a special contract variant from that alleged in the special count. *Ruckman v. Bergholz,* 37 *N. J. L.* 437 (*E. & A.* 1874); *Weart v. Hoagland's Administrator,* 22 *N. J. L.* 517, 519 (*Sup. Ct.* 1850).

The specific problems for disposition inherent in the principal question involved in this appeal, appear to have been subjected to judicial examination for the first time in *City of Hoboken v. Gear,* 27 *N. J. L.* 265 (*Sup. Ct.* 1859) where Chief Justice Green said (at *p.* 277): "This is a case of first impression in this court, and so far as I am aware, without a precedent anywhere. None was referred to on the argument, and my researches have not enabled me to find one. * * *" In *City of Hoboken v. Gear, supra,* an action of *assumpsit* was brought by Gear against the mayor and council of the City of Hoboken to recover salary alleged to be due him as a policeman of said city (*p.* 266). The plaintiff on June 20, 1855 had been appointed a policeman, by resolution of council, under an ordinance of June 18, 1855 providing for the appointment of a chief of police and of five assistant policemen to hold their respective offices for the term of two years and to receive by way of compensation for their services a stated salary of $450 per annum. On January 9, 1856, a resolution was passed by council disbanding the police force, and at the trial of Gear's suit the proofs showed that after January 20, 1856 when the resolution was communicated to him, he rendered no services,

nor was he in any way recognized, as a policeman (and he was paid in full to January 20, 1856) (*p*. 268). The defendant, at the close of the plaintiff's case, objected that there could be no recovery, the declaration containing only the common *indebitatus assumpsit* count for services performed by plaintiff as a policeman and there was no evidence that he rendered any such service which had not been compensated. The trial court then permitted plaintiff to amend his declaration to insert a claim for salary by virtue of special contract by which defendant agreed to pay him for two years at $450 per annum. The former Supreme Court reversed the judgment for the plaintiff and directed the entry of nonsuit. Chief Justice Green speaking for the former Supreme Court said (*p*. 278) :

"An appointment to a public office, therefore, either by government or by a municipal corporation, under a law fixing the compensation and the term of its continuance, is neither a contract between the public and the officer that the service shall continue during the designated term, nor that the salary shall not be changed during the term of office. It is at most a contract that while the party continues to perform the duties of the office, he shall receive the compensation which may from time to time be provided by law."

Judge Vredenburgh concurred, but his opinion indicates that he favored the view that the employment was contractual in nature, and the plaintiff was to be nonsuited on other grounds : namely, that he had tendered a written resignation to the council on January 9, 1856, and the resolution of council constituted an acceptance thereof, a mutual termination of the contract.

The next decision of importance was *Stuhr v. Curran*, 44 *N. J. L.* 181 (*E. & A.* 1882) which expressed the doctrine that offices in this country are not held by grant or contract, and held that the right to fees or compensation for performance of the duties of the office arises from the rendition of the services. And later in *Erwin v. Jersey City,* 60 *N. J. L.* 141 (*E. & A.* 1897), it was held (*pp*. 149–150) that "\* \* \* one who becomes a public officer *de facto*

without dishonesty. or fraud, and who has performed the duties of the office, may recover such compensation for those services, as is fixed by law, from the municipality which is by law to pay such compensation. * * *" To the same effect is *Moore v. Pitman,* 109 *N. J. L.* 225 (*E. & A.* 1932). Another authority pertinent to the question involved in this appeal was *Fitzpatrick v. Passaic,* 105 *N. J. L.* 103 (*Sup. Ct.* 1928). The *Fitzpatrick* case, *supra,* was a suit by policemen and firemen for salaries claimed to be due them from the city under promotions made on the eve of a change in the city administration. The new regime refused to recognize the promotions and the proofs at trial showed that no service in the new position was ever performed by the plaintiffs. The former Supreme Court (*p.* 105) quoted from Chief Justice Green's opinion in *City of Hoboken v. Gear, supra,* holding that *prospective* salary could not be obtained by a contract action, but that appointment to public office "* * * is at most a contract that while the party continues to perform the duties of the office he shall receive the compensation which may from time to time be provided by law * * *" and that the right to compensation derives from the rendition of the services. The decision was affirmed on the former Supreme Court's opinion in 105 *N. J. L.* 632 (*E. & A.* 1929).

Further, in 1917 the former Court of Errors and Appeals specifically pronounced that the doctrine of *Stuhr v. Curran, supra, i. e.,* that a public officer holds no contract for service with the government of which he is a part and therefore may not sue for damages for breach of contract, does not apply to public *employees. Ross v. Freeholders of Hudson,* 90 *N. J. L.* 522, 525–527 (*E. & A.* 1917). It was held in the *Ross* case, *supra,* that the appointment of the plaintiff, Ross, as a jail guard created between him and the board of chosen freeholders of the defendant county the ordinary relationship of master and servant, and a contractual relationship existed between them. It was further held that the provisions of the Civil Service Law must be read into such contract, *and for a breach of this contract of employment as*

*thus constructed* the defendant county could be held liable in damages.

What is to be deduced from the foregoing authorities? Where the services have been performed, and the public servant is an employee, a civil action lies for recovery of the reasonable value of the services rendered, and the action is in the nature of an action upon the case at common law, namely *assumpsit*, principally *indebitatus assumpsit*, the action in form and substance resorted to for such relief in this State for more than a century. And where the circumstances permit, i: e., when debt as well as *assumpsit* would lie at common law, the action is *in the nature* of debt founded upon a contract without a specialty. (The significance of the term "without a specialty" as used in *R. S.* 2:24–1, *supra,* is that it imported absence of a writing obligatory in its technical sense, rather than in its loose sense as, for example, a duty imposed by statute. See discussion of *R. S.* 2:24–5, *post*). In actions such as these, the substantive right stems *from the rendition of the services*; the statutory rate of pay is the measure by which the true value of the service performed is proved, and this is the more apparent by virtue of the fact that these legislative enactments make no provision for their enforcement, a clear legislative recognition of the availability of ordinary legal remedies. The only conclusion to be reached, therefore, is that the six-year statute of limitation, *R. S.* 2:24–1, *supra,* clearly applies to such actions and was a valid defense in this case. Compare *Anderson v. City of Bridgeport,* 134 *Conn.* 260, 56 *A.* 2d 650 (*Sup. Ct. Err.* 1948).

The Superior Court, Appellate Division, reaching a conclusion opposed to that above expressed relied on *Cowenhoven v. Freeholders,* 44 *N. J. L.* 232 (*Sup. Ct.* 1882). Dissection of the *Cowenhoven* case, *supra,* shows that the action there was brought to recover statutory fees of a state officer, namely a common pleas judge, under the act of the Legislature of March 18, 1869 (*L.* 1869, c. *CXCVI, p.* 511), which was a supplement to "An Act to provide for the support of the

government of this state, and to fix the salaries of public officers * * *," approved April 6, 1865. The statute there under consideration was a legislative direction to counties to assist in the support of the State Government, whereas in the present case the statute in question (*L*. 1938, *c*. 54, *supra*) constitutes merely a legislative pronouncement limiting the first class counties in the exercise of their powers in relation to agreements with their employees with respect to the remuneration to be accorded them for the services they perform. Thus the present case is clearly within the rule of *Ross v. Bd. of Chosen Freeholders of the County of Hudson, supra*, under which doctrine the jail guards whose salaries are the basis of this action stand in a contractual relationship to the county, and the provisions of the statute constitute provisions of the contract of employment. The plaintiffs' argument raises the question, however, whether the contract as so constituted requires for enforcement of its terms an action of debt founded on contract, *with* a specialty, which would, if resolved in plaintiffs' favor, require the denial of the defense of *R. S.* 2:24–1, *supra*, the six-year statute of limitation (which *inter alia* refers to actions of debt founded on contract *without* a specialty). And for the determination of this question we must resort to the customary sources of statutory construction as well as judicial expression. The most obvious point of embarkation upon this study is the companion statute of limitation, *R. S.* 2:24–5, the limitation entitled "Sixteen years; actions on lease, *specially* or award * * *" (Emphasis supplied). The plaintiffs' argument in this connection would seem to stem from the discussion of authorities in the *Cowenhoven* case, *supra*, upon which the former Supreme Court there relied. Those authorities appear to have been matters in which special statutory actions were involved, reference being made to such as "* * * the highest kind of specialty * * *" (See 44 *N. J. L.*, at *p*. 234). The obvious end result of the application of this theory would be either that *no* statute of limitation applies,

or that *R. S.* 2:24–5, *supra*, applies. *Cf. Elsasser v. Haines,* 52 *N. J. L.* 10, 23 (*Sup. Ct.* 1889).

Construction of *R. S.* 2:24–5, *supra*, and its predecessors appears to be a subject upon which the courts of this State have not often declared their views. The pertinent decisions relate principally to the question whether or not a writing in the case before the court was a writing obligatory, an "obligation conditioned for the payment of money only," within the statutory language. See, for example, *Alexander v. Manza,* 132 *N. J. L.* 374 (*E. & A.* 1945); *Gural v. Engel,* 129 *N. J. L.* 63, 64 (*E. & A.* 1942); *Ehnes v. Hronis,* 127 *N. J. L.* 551 (*E. & A.* 1942); *In re Harris,* 101 *N. J. Eq.* 5, 7 (*Ch.* 1927); *Wagoner v. Watts,* 44 *N. J. L.* 126 (*Sup. Ct.* 1882), affirmed 45 *N. J. L.* 184 (*E. & A.* 1882); *Kinna v. Smith,* 3 *N. J. Eq.* 14 (*Ch.* 1834); *Marston v. Seabury,* 3 *N. J. L.* 28 (\*435) (*Sup. Ct.* 1808). However, there is one decision in which the language of the 16-year statute of limitation was exhaustively construed, namely *Elsasser v. Haines, supra.* Copious quotation is justified owing to the pertinency and fitness of the language there used by the former Supreme Court in construing the then existing statutory language (in substance identical with *R. S.* 2:24–5). It was then held as follows:

P. 21. "Plainly, there can be no denial that the expression 'obligation,' in its common acceptation, will embrace every duty imposed by law, whether such be the creature of a statute, of a record, of a recognizance, of a sealed instrument, or of a simple contract. But that the word was not used with this compass of import in this context is self-evident. Possessed of such wide meaning, the term would stand in this section of the act not only as an incongruity, but, in view of any rational construction of it, as an impossibility. Indeed, any attempt to give it so wide a scope would appear to be the *reductio ad absurdum,* for it would be applicable not only to all the cases regulated by the section in which it is found, but also almost to all of the cases regulated in the other sections of the statute. Therefore it requires no argument to show that the term, as here used, cannot be possessed of that wide reach of import that inheres in it in common use.

But the term has in law a secondary and limited signification, *whereby it is made to express but a single class of instruments, those*

*which are under seal and stipulate for the payment of money.* That the word has both this general and particular meaning cannot be questioned." (Italics supplied).

*P.* 22. "That the term had the restricted force thus indicated when used strictly according to legal terminology, cannot be doubted, and it seems to me it is plain that it was thus used in the statutory clause under criticism.

Accepting the word as here used in this sense, *it becomes of course apparent that the legislative purpose in this section was to establish a rule with respect to actions of a single class, that is to say, actions upon sealed instruments for the payment of money only.* On this assumption the language of the clause becomes clear, appropriate, definite and entirely congruous, so much so that it does not call so much for construction as simply for interpretation." (Italics supplied).

*Pp.* 23–24 "There is also a further indication in this section that seems to me to antagonize such a supposition. The ear-mark referred to appears in the clause that defines the force of part payment of the claims previously put under regulation. The language is this: 'But if any part payment shall have been made on any such lease, specialty or award,' &c. By looking at the regulating clause it will appear that the term 'specialty' is here applied to the three following money claims, *viz*: to single bills, to penal bills, and 'obligations for the payment of money;' and *thus we have the express declaration of the legislature that the term 'obligation,' as it stands in this section, is synonymous with 'specialty,' a word which, in its technical signification, imports an instrument under seal for the payment of money.* The term 'specialty' it is true, is sometimes employed in a loose way of being invested with a more extensive meaning; but *when precision is important the term is used with the limited force just assigned to it.* In the present case we find the word introduced with the nicest discrimination; it is not applied to leases under seal, which may or may not be specialties, nor to awards which are not specialties but to single or penal bills, and to obligations, which are plainly specialties, construing the last term in its technical sense.

*That these words, 'obligation' and 'specialty,' were used in their technical sense, seems to me clear.* The section is remarkable for the perspicuity and propriety of its language; it was drawn by Judge Paterson, and in all its parts exhibits the hand of that master of legal phraseology; and under the conditions of the case, it would be, in my judgment, an unreasonable assumption to hold, that, in this section, both the term 'obligation' and the term 'specialty' were used loosely, and not in their purely legal sense." (Italics supplied.)

■ The construction of the 16-year statute of limitation expressed by Chief Justice Beasley in the *Elsasser* case, *supra*, leaves no room for doubt. Having stood with legislative sanction since 1889 it is fair to assume that the Legislature has accepted that construction even though the decision was not one of a court of last resort. *Barringer v. Miele*, 6 *N. J.* 139, 144 (1951); *State v. Moresh*, 122 *N. J. L.* 77, 79 (*E. & A.* 1939). *Cf. Mechanics Finance Co. v. Austin*, 8 *N. J.* 577, 584, 585 (1952). We conclude that the construction accorded the 16-year statute of limitation in the *Elsasser* case, *supra*, was correct, that it is equally applicable to *R. S.* 2:24–5, *supra*, and therefore the latter is confined to actions upon sealed instruments for the payment of money only. It follows that other specialties are not included within the bar of the 16-year statute of limitation, *R. S.* 2:24–5, *supra*.

■■ It follows from the foregoing that the words "without a specialty" as used in *R. S.* 2:24–1, *supra*, refer to actions in the nature of debt founded upon contract without a sealed instrument, or obligation, for the payment of money. It is axiomatic that statutes *in pari materia* are to be construed together so as to effectuate general legislative policy. *Lynch v. Borough of Edgewater*, 8 *N. J.* 279, 286 (1951). *Cf. Hill v. Borough of Collingswood*, 9 *N. J.* 369, 375 (1952).

In this posture of the applicable law we are met with the plaintiffs' contention that the present action is founded upon a statutory direction, and therefore not within the six-year statute of limitation. We have demonstrated that in form and substance the suit here is for compensation for services rendered, within the statute as an action on the case, as on implied contract—an *assumpsit*.

Further, it may be persuasively argued that the six-year statute (*R. S.* 2:24–1, *supra*) *is* applicable where a statutory direction is involved, on the premise that such an action is one of *liability assumpsit*, which at common law appears to have been an action on the case for the (implied) promise to pay money "* * * in consideration of a *legal liability*

to pay it * * * as upon a * * * by-law, or foreign judgment; or for a fine * * *, toll, port-duty * * *." See *I Tidd's Practice* (1840, 3rd *Am.* from 9th *London ed.*), *p.* 2. In *liability assumpsit* the circumstances which induced the defendant's liability were set forth specially in the declaration. *Ibid,* footnote (e). We choose not to express a determination of this nature, but rather to point out the difference between statutory directions which may be classifiable as "specialties" and statutory designations which are construable as mandatory provisions of contracts of a lower order, which as above stated distinguishes *Cowenhoven v. Freeholders, supra,* from this case. This distinction was inherent in *Outwater v. Passaic, supra,* where the former Supreme Court held that where an ordinary agent performs work for a municipality at its request the right to compensation has its foundation in contract, but where the salary of an elected public officer is concerned the right cannot originate in contract. Under our present statutes relating to municipal and county officers it may be argued that this decision may be subject to question, for the statutes provide that the respective governing bodies may "contract with any officer * * * to perform his duties at a salary less than that fixed by law." See *R. S.* 40:46–30 (relative to municipalities) and *R. S.* 40:21–15 (relative to counties). However such an hypothesis is not necessary to a determination in the present case.

Other decisions adverted to by the plaintiffs are likewise distinguishable. *Mayor, &c., of Jersey City v. Sackett,* 44 *N. J. L.* 428 (*E. & A.* 1882) is not in point, for it deals with suits for statutory awards of damages sustained from the laying out of public streets—obviously not contractual and dependent for the right of action on the statute itself. *McFarlan v. Morris Canal and Banking Co.,* 44 *N. J. L.* 471 (*Sup. Ct.* 1882) is in the same category: a statutory action for damages for the taking of land. *Warren County v. Harden,* 95 *N. J. L.* 122, 125 (*E. & A.* 1920), likewise involved a strictly statutory liability, a suit by the county for

maintenance money for an insane person confined to the state hospital by formal judicial commitment. *Smith v. Jersey City,* 52 *N. J. L.* 184 (*E. & A.* 1889) involved a legislative enactment requiring repayment of excess assessments— obviously action in such a case is solely dependent upon the statute. *Cole v. Brandle,* 127 *N. J. Eq.* 31 (*E. & A.* 1939) involved a strictly statutory liability of corporate officers. *Baur v. Common Pleas of Essex, supra,* involved a strictly statutory form of action unknown to the common law, namely an action under the Workmen's Compensation Act of 1911. The point of distinguishment here is that on settled authority, *Ross v. Bd. of Chosen Freeholders of the County of Hudson, supra,* the claim of the plaintiffs in the present case rested not in statute but upon the contractual status of their intestates as employees of the county, the substance of their action was one for compensation for services rendered raising the implied contract to pay the reasonable value thereof as established by statute (*L.* 1938, *c.* 54, *supra*) and the historical form of such action is established in the common law in this state to be that form of action on the case known as *indebitatus assumpsit.*

For the reasons above stated the judgment of the Superior Court, Appellate Division, affirming the judgment for the plaintiffs entered in the Hudson County Court, is reversed. Inasmuch as the statute of limitation constitutes a complete defense to the plaintiffs' action in this case judgment for the defendant will be entered here. Where a motion for judgment should have been granted by the trial court and judgment entered for the defendant, the appellate court will reverse the judgment entered for the plaintiff, and enter judgment for the defendant. *Rule* 1:4–9(*b*). *Jaroszewski v. Central Railroad Co., New Jersey,* 9 *N. J.* 231, 236 (1952).

WILLIAM J. BRENNAN, J. (dissenting). I dissent and would affirm the judgment of the Appellate Division for the

416

reasons expressed in the opinion of Judge Eastwood for that court, 16 *N. J. Super.* 457 (*App. Div.* 1951).

HEHER, J., concurs in this dissent.

*For reversal*—Chief Justice VANDERBILT, and Justices OLIPHANT, WACHENFELD and BURLING—4.

*For affirmance*—Justices HEHER and BRENNAN—2.