Edward **RICKENBACH**, Jack **McTague** as executor of the estate of James McTague, and Hattie McTague by and through her attorney, on behalf of themselves and all others similarly situated, Plaintiffs,

v.

**WELLS FARGO BANK, N.A.,** et al., Defendants.

Civil No. 08–2687 (JBS/KMW).

United States District Court, D. New Jersey.

June 22, 2009.

---

Lewis G. Adler, Esq., Law Office of Lewis Adler, Woodbury, NJ, for Plaintiffs Edward Rickenbach, Jack McTague and Hattie McTague.

Diane A. Bettino, Esq., Mark S. Melodia, Esq., Reed Smith, LLP, Princeton, NJ, for Defendants Wells Fargo, N.A. and Mortgage Electronic Registration Systems, Inc.

Andrew Christopher Sayles, Esq. Connell Foley, LLP, Roseland, NJ, for Defendant Zucker, Goldberg, and Ackerman.

## *OPINION*

SIMANDLE, District Judge.

## I. INTRODUCTION

This matter is before the Court on two motions to dismiss, one brought by the defendants Wells Fargo, N.A. ("Defendant Wells") and Mortgage Electronic Registration Systems, Inc. ("Defendant MERS") [Docket Item 20], and the other by the defendant law firm Zucker, Goldberg, and Ackerman ("Defendant Zucker") [Docket Item 21]. Together, Defendants seek dismissal of Plaintiffs' myriad claims under New Jersey law arising out of allegedly excessive and illegal mortgage processing fees. This opinion will address the voluntary payment rule, the limited reach of the 16–year statute of limitations for documents under seal pursuant to N.J. Stat. Ann. § 2A:14–4, whether a private right of action arises under the Fair Foreclosure Act and New Jersey Court Rules pertaining to attorney's fees and foreclosure fees;

further, the opinion will consider whether various claims against the defendant law firm are barred by the litigation privilege.

The Court has addressed the many arguments raised by all sides and will grant Defendant Zucker's motion in full and Defendants Wells' and MERS' motion in part, noting that while potentially meritorious, several of Defendants' arguments cannot be resolved in a motion to dismiss which must be confined to the pleadings. As a result of this opinion, Plaintiff Rickenbach's contract claim against Defendants Wells and MERS survives dismissal, while Plaintiffs McTague may continue to assert claims for breach of contract, negligence, breach of an implied duty of good faith and fair dealing, and violations of the New Jersey Consumer Fraud Act and the New Jersey Truth–In–Consumer Contract, Warranty, and Notice Act against Defendants Wells and MERS only.

## II. BACKGROUND

### A. Factual Allegations

This matter being before the Court on a motion to dismiss, the following factual recital takes the allegations in Plaintiffs' Amended Complaint as true and construes them in the light most favorable to Plaintiffs.

#### 1. *Plaintiff Edward Rickenbach*

Plaintiff Edward Rickenbach ("Plaintiff Rickenbach") executed the mortgage and note at issue in this case under seal on June 26, 1996. (Am.Compl.¶ 15.) On November 11, 2001, Defendant Zucker filed a foreclosure proceeding on behalf of Defendant Wells against Plaintiff Rickenbach. (*Id.* ¶ 16.) In response, Plaintiff Rickenbach sought and received reinstatement of his mortgage, which occurred on or about December 26, 2001. (*Id.* ¶¶ 17–18.) The foreclosure action and *lis pendens* were dismissed. (*Id.* ¶ 19.) Plaintiff Ricken-

bach then requested a statement of the amount needed to satisfy his mortgage along with any fees ("payoff statement"), so that he could refinance his home with a new mortgage company. (*Id.* ¶ 20.) According to the Amended Complaint, "on or about May 30, 2002," Plaintiff Rickenbach paid his remaining mortgage in full. (*Id.* ¶ 21.) The check for that payment is dated April 9, 2002. (Dzura Certification, Ex. 2.)

According to Plaintiffs, the reinstatement and ultimate satisfaction of Plaintiff Rickenbach's mortgage "were improperly calculated as [ ] Defendant Wells included charges which were in excess of the amounts allowed either pursuant to the terms of the note and mortgage or New Jersey law." (*Id.* ¶ 22.) Specifically, Plaintiff Rickenbach alleges that the fee charged to him included attorneys fees and costs for an entire foreclosure proceeding, despite the termination of foreclosure proceedings. (*Id.* ¶ 33(a).)

#### 2. *Plaintiffs McTague*

On June 6, 1976, Plaintiff Hattie McTague and her late husband James McTague, whose estate is now represented by Jack McTague, (collectively, "Plaintiffs McTague") executed their mortgage and note under seal. (*Id.* ¶ 23.) On or about March, 2005, Defendant Zucker filed a foreclosure proceeding on behalf of Defendants MERS and Wells, the servicer of the loan for Defendant MERS, against Plaintiffs McTague. (*Id.* ¶¶ 25–26.) After receiving the foreclosure complaint, counsel for Plaintiffs McTague requested a payoff statement for the mortgage. (*Id.* ¶ 27.) According to the Amended Complaint, Defendant Zucker, on behalf of Defendants MERS and Wells, provided Plaintiffs McTague with a statement dated June 7, 2007 in the amount of $7,061.28, of which $910.00 was for attorney fees and $1,009.00

was for costs. (*Id.* ¶¶ 28, 30.) The June 7, 2007 date appears to be incorrect, however, because attached to the Amended Complaint is the actual payoff letter from Defendant Zucker, and it is dated March 11, 2005.[1] (Am.Compl.Ex. A.) That letter explains "the amounts required to reinstate and payoff our client's mortgage and for dismissal of the foreclosure action." (*Id.*) Defendant Wells participated in the preparation of that statement. (Am. Compl.¶ 29.) On or about April 21, 2005, Plaintiffs McTague paid the sums demanded in full and Defendants dismissed the foreclosure action and discharged the mortgage. (*Id.* ¶ 31–32.) Plaintiffs McTague allege that under New Jersey Court Rules, Defendants could charge no more than $177.13 for attorney fees. (*Id.* ¶ 33(a).)

### 3. *Defendants Allegedly Wrongful Conduct Towards Defaulting Borrowers of Residential Mortgages*

Plaintiffs accuse Defendants, generally, of having "engaged in a uniform scheme and course of conduct to inflate their profits by charging and collecting various fees not authorized by the loan documents or applicable law" thereby "overcharging defaulting borrowers of residential mortgages." (*Id.* ¶ 33.) The Amended Complaint alleges that Defendants overcharge defaulting borrowers of residential mortgages by charging:

(a) attorneys fees and costs in excess of those actually incurred and beyond the amount permitted by New Jersey Court Rules;

(b) excessive costs in violation of statute and New Jersey Court Rules;

(c) recording fees in excess of the actual fee;

(d) service of process fees beyond what is permissible under statute and Court Rules; and

(e) impermissible fees for obtaining a certificate of regularity.

(*Id.* ¶ 33.) In addition, the Amended Complaint alleges that Defendants overcharged the putative class by (1) failing to credit deposits made toward sheriff's commissions, and (2) continuing to charge the contract interest rate when the judgment interest rate should be used. (*Id.* ¶ 33(f).)

### B. Procedural History

On May 30, 2008, Plaintiffs brought this putative class action against Defendant Wells. On August 15, 2008, Plaintiffs filed their Amended Complaint against Defendant Wells, along with Defendants MERS and Zucker. The Amended Complaint sets forth the following claims: breach of contract against Defendant Wells (Count I); negligence against all Defendants (Count II); breach of duty of good faith and fair dealing against all Defendants (Count III); unjust enrichment against all Defendants (Court IV); unfair and deceptive assessment and collection of fees against Defendants Wells and MERS (Count V); violations of the Fair Foreclosure Act against Defendants Wells and MERS (Count VI); violations of the New Jersey State Court Rules against Defendants Wells and MERS (Count VII); violations of the New Jersey Consumer Fraud Act ("NJCFA") against Defendants Wells and MERS (Count VIII); and violations of the New Jersey Truth–In–Consumer Contract, Warranty, and Notice Act

---

1. In addition, the actual payoff statement includes slightly different numbers, such that the total was $9,831.42, but the portions for attorney fees and costs are correctly listed in the Amended Complaint ($1009.00 and $910.00, respectively). (Am.Compl.Ex. A.) The Court notes that, even on a motion to dismiss, it is appropriate to rely on exhibits attached to a complaint. *Lum v. Bank of America*, 361 F.3d 217, 222 n. 3 (3d Cir.2004).

against Defendants Wells and MERS (Count IX). Plaintiffs also named various John Doe parties to the action (Count X).[2]

On November 17, 2008, Defendant Zucker and Defendants Wells and MERS filed their separate motions to dismiss, along with exhibits [Docket Items 20 & 21]. On January 2, 2009, Plaintiffs opposed each motion separately [Docket Items 24 & 25]. Defendants Wells and MERS replied on January 12, 2009 and Defendant Zucker replied on January 26, 2009 [Docket Items 26 & 26]. On February 27, 2009, after receiving permission from the Court, Plaintiffs submitted a sur-reply and on March 6, 2009, all defendants responded to Plaintiffs' sur-reply [Docket Items 30, 31, 32 & 33]. Through Plaintiffs' sur-reply Plaintiffs voluntarily dismissed their claims of unjust enrichment (Count IV) [Docket Item 30].

## III. DISCUSSION

### A. Standard of Review

On a Rule 12(b)(6) motion to dismiss for failure to state a claim for which relief may be granted, the Court must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Phillips v. County of Allegheny*, 515 F.3d 224, 231 (3d Cir.2008) (quoting *Pinker v. Roche Holdings Ltd.*, 292 F.3d 361, 374 n. 7 (3d Cir.2002)).

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action

will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007) (quoting *Papasan v. Allain*, 478 U.S. 265, 286, 106 S.Ct. 2932, 92 L.Ed.2d 209 (1986)). "In deciding motions to dismiss pursuant to Rule 12(b)(6), courts generally consider only the allegations in the complaint, exhibits attached to the complaint, matters of public record, and documents that form the basis of a claim." *Lum v. Bank of America*, 361 F.3d 217, 222 n. 3 (3d Cir.2004) (citation omitted).

### B. Defendants Wells' and MERS's Motion to Dismiss

Defendants Wells and MERS challenge Plaintiffs' Amended Complaint on numerous grounds. They maintain that Plaintiffs' Amended Complaint cannot state a claim because of the voluntary payment rule, and that Plaintiffs McTague have not suffered any injury and so their action must be dismissed. The Court, however, cannot resolve arguments based upon unpleaded facts on a motion to dismiss. Wells and MERS ask the Court to dismiss Plaintiff Rickenbach's claims for falling outside the statute of limitations, and the Court will dismiss all but Rickenbach's contract claim as untimely. Defendants also attack specific claims as insufficient to survive a Rule 12(b)(6) motion. The Court agrees that Plaintiffs McTague cannot bring a private action under the Fair Foreclosure Act and New Jersey Court Rules, nor can they state a claim for "unfair and deceptive assessment and collection of fees," and so will dismiss those counts. The remaining claims against Defendants Wells and MERS by Plaintiffs McTague will survive this motion to dismiss.

---

**2.** Though listed among the various other causes of action, Count X is not a cause of action, but instead lists other potential unnamed defendants to Plaintiffs' suit.

### 1. *Voluntary Payment Rule*

 Wells and MERS suggest that dismissal is required because Plaintiffs voluntarily paid the allegedly improper fees. The common law voluntary payment rule "provides that 'where a party, without mistake of fact, or fraud, duress or extortion, voluntarily pays money on a demand which is not enforcible against him, he cannot recover it back.'" *Matter of New Jersey State Bd. of Dentistry*, 84 N.J. 582, 423 A.2d 640, 643 (1980) (quoting *City of Camden v. Green*, 54 N.J.L. 591, 25 A. 357, 358 (1892)). Without determining whether the voluntary payment rule is applicable to any or all of Plaintiffs' claims against Defendants,[3] the Court finds that the rule raises questions of fact that cannot be resolved at this stage. This Court has previously determined that application of the voluntary payment rule cannot be resolved on a motion to dismiss, where the complaint does not establish whether the plaintiff's payment was truly voluntary and made without mistake of fact. *Carducci v. Aetna U.S. Healthcare*, 247 F.Supp.2d 596, 619 (D.N.J.2003), *overturned on other grounds by Levine v. United Healthcare Corp.*, 402 F.3d 156 (3d Cir.2005). This Court explained:

> Plaintiffs are correct that this Court cannot dismiss at this juncture based on the voluntary payment doctrine because facts exist under which plaintiffs could be relieved from its application.
>
> First, plaintiffs' payment may not have been voluntary because a payment is not voluntary when the plaintiff believed that the law which imposed it was not valid, but made the payment anyway. *N.J. State Bar Ass'n v. Berman*, [611 A.2d 1119, 1128 (N.J.Super.Ct.App.Div.1992) ]. Such situations generally arise when a plaintiff pays a fee that he believes is invalid, but pays it anyway so that he can continue to practice his profession or continue his business. *See State Board of Dentistry*, [423 A.2d at 644]. This Court cannot decide on a motion to dismiss whether plaintiffs believed that the subrogation and reimbursement liens were invalid, but paid in order to continue their health insurance coverage.
>
> Second, the Court cannot now determine whether plaintiffs acted under a mistake of fact when they made the payments or whether defendants acted improperly in making their claims.

*Carducci*, 247 F.Supp.2d at 620.

In the present action, the Court cannot decide at this juncture whether Plaintiffs knew that mortgage fees were invalid but paid them in order to avoid foreclosure and eviction, thereby making the payments involuntary. Likewise, the Court cannot judge whether Plaintiffs made those payments without mistake of facts. The Court therefore declines to dismiss Plaintiffs' claims under the voluntary payment rule, without prejudice to Defendants Wells and MERS raising such an argument on a motion for summary judgment.[4]

---

**3.** The Court observes, without deciding, that the New Jersey Consumer Fraud Act appears to conflict with the common law voluntary payment rule, for the CFA permits suit based solely on regulatory violations, even in the absence of fraud or duress. *See Bosland v. Warnock Dodge, Inc.*, 197 N.J. 543, 964 A.2d 741, 748 (2009) ("[I]ntent is not an element if the [CFA] claim is based on a defendant's alleged violation of a regulation, because 'the regulations impose strict liability for such violations.' ") (quoting *Cox v. Sears Roebuck & Co.*, 138 N.J. 2, 647 A.2d 454, 462 (1994)).

**4.** In their reply to Plaintiffs' sur-reply, Defendants Wells and MERS raise for the first time the entire controversy doctrine, suggesting that Plaintiffs should have raised their objections to these fees in their foreclosure proceedings. The Court will not consider this argument, because it was not presented in Defendants' motion to dismiss or reply and so

### 2. *Absence of Injury*

■ Defendants Wells and MERS submit as an attachment to their motion to dismiss evidence that Plaintiffs McTague received a full refund for the fees they were allegedly improperly charged and ask the Court to dismiss the McTagues' complaint because they suffered no injury. Defendants offer no argument to support this Court's consideration of evidence outside the complaint, where the evidence was not attached to the complaint and does not include documents that form the basis of Plaintiffs' allegations or are a matter of public record. *See Lum*, 361 F.3d at 222 n. 3. The Court will not, therefore, consider any evidence that the McTagues received a full refund,[5] though Defendants may raise this potentially dispositive argument in a motion for summary judgment.

### 3. *Statute of Limitations*

■ Defendants Wells and MERS attack the timeliness of Plaintiff Rickenbach's claims on two fronts. His contract claim, they argue, is not subject to the sixteen year statute of limitations for documents under seal, N.J. Stat. Ann. § 2A:14–4, but instead is subject to the six year limitation for contract claims, N.J. Stat. Ann. § 2A:14–1. Applying the six year limitation to all of his claims, Defendants argue that Plaintiff Rickenbach's claims are untimely because he paid the allegedly improper fees more than six years before bringing this action. In support of this argument, Defendants submit the check by which Rickenbach made this payment. The Court finds that the sixteen year stat-

ute of limitations is applicable to Plaintiff Rickenbach's contract claim, assuming that his mortgage and note were truly signed "under seal," but will dismiss Plaintiff Rickenbach's other claims as untimely.

Plaintiffs assert that their contracts claims are governed by the sixteen year statute of limitations set out in Section 2A:14–4, N.J. Stat. Ann., which reads in relevant part:

> Actions on lease, specialty, recognizance or award; 16 years; effect of payments; action on instrument under seal brought by merchant or financial institution; 6 years
>
> Every action at law for rent or arrears of rent, founded upon a lease under seal, *every action at law* upon a single or penal bill under seal for the payment of money only, *upon an obligation under seal conditioned for the payment of money only*, upon a recognizance or upon an award under the hands and seals of arbitrators for the payment of money only *shall be commenced within 16 years next after the cause of any such action shall have accrued.* If, however, any payment is made on any such lease, specialty, recognizance or award within or after such period of 16 years, an action thereon may be commenced within 16 years next after such payment, and not thereafter.

N.J. Stat. Ann. § 2A:14–4 (emphasis added). Defendants respond that the above provision only applies to actions brought "for the payment of money only," whereas Plaintiffs seek a refund of amounts they

---

Plaintiffs had no opportunity to respond. *See Bayer AG v. Schein Pharmaceutical, Inc.*, 129 F.Supp.2d 705, 716 (D.N.J.2001) (argument raised for first time in reply must be stricken).

**5.** Wells and MERS assert that they issued a refund to Ms. McTague in October, 2005, for $1,790.00, resulting in her payment of a total of only $129.00 for attorneys' fees and costs

for the foreclosure proceeding, or less than the amount the McTagues claim the Court Rules would have allow. If discovery shows this is correct, one would hope that appropriate admissions and stipulations would be forthcoming without the necessity of summary judgment practice.

were allegedly overcharged. Defendants ask the Court to apply the six year statute of limitations provided for in N.J. Stat. Ann. § 2A:14–1, even though that provision expressly states that it does not apply to documents under seal.

The Court finds that Defendants misinterpret Section 2A:14–4, because the phrase "for payment of money only" limits the "obligation" and not the "action at law." The plain language of the provision leads to such a conclusion, for the clause "upon an obligation under seal conditioned for the payment of money only" is separate and apart from "every action at law." If "for the payment of money only" qualified the cause of action, and not the instrument, there would be no need to repeat the phrase after each instrument. If the New Jersey legislature meant "every action at law for the payment of money only upon a penal bill under seal or an obligation under seal," the legislature could have so written. It did not.

The Court's reading of Section 2A:14–4 is compelled by the New Jersey courts. Section 2A:14–4 is an antiquated provision, first construed in *Elasser v. Haines,* 52 N.J.L. 10, 18 A. 1095 (N.J.Sup.Ct.1889) in its earlier form. In *Miller v. Bd. of Chosen Freeholders,* 10 N.J. 398, 91 A.2d 729, 735–37 (1952) the New Jersey Supreme Court adopted the *Elasser* construction, and the Court finds this interpretation conclusive. The question before the *Elasser* and *Miller* courts was the meaning of "specialty" and "obligation" as used in

N.J.Rev.Stat. § 2:24–5, the predecessor to Section 2A:14–4.[6] The earlier provision applied to "every action of debt … upon any obligation with condition for payment of money only." N.J.Rev.Stat. § 2:24–5. The courts held that "obligation" and "specialty" were synonymous for the purpose of the sixteen year statute of limitations, and were " 'made to express but a single class of instruments, those which are under seal and stipulate for the payment of money.' " *Miller,* 91 A.2d at 736 (quoting *Elasser,* 18 A. at 1100); *see United States v. Jacobs,* 155 F.Supp. 182, 193–94 (D.N.J. 1957) ("[I]n the case of *Miller* [ ] that court approved the conclusions of Chief Justice Beasley in *Elasser* [ ] to the effect that the words 'obligation' and 'specialty,' as used in the statute of limitations, import an instrument under seal for the payment of money."). The statute has since been amended to include the terms "under seal," but the phrase "for payment of money only" remains the same and continues to qualify the instrument, not the cause of action. *See Miller,* 91 A.2d at 736. In addition, the Court observes that while the original provision applied to "every action of debt," the current provision, applicable to this claim, applies broadly to "every action at law." N.J. Stat. Ann. § 2A:14–4; N.J.Rev.Stat. § 2:24–5. There being no argument that the mortgages and notes at issue were for anything other than payment of money, the Court will not dismiss Plaintiff Rickenbach's breach of contract claim as untimely for it appears that Section 2A:14–4 applies to that claim. Defen-

---

**6.** The earlier version of Section 2A:14–4 was found in N.J.Rev.Stat. § 2:24–5 and read:

That every action of debt, or covenant for rent, or arrearages of rent, founded upon any lease under seal, whether indented or poll, and *every action of debt* upon any single or penal bill for the payments of money, or *upon any obligation with condition for the payment of money only,* or upon any award, under the hands and seals of

arbitrators, for the payment of money only, *shall be commenced and sued within sixteen years next after the cause of such action shall have accrued, and not after;* but if any payment shall have been made, on any such lease, specialty, or award, within or after …

*Elasser,* 18 A. at 1099 (quoting N.J.Rev.Stat. § 2:24–5) (emphasis added).

dants have reserved the right to challenge Plaintiffs' allegation that the mortgage and note were "under seal" and may raise this question in a motion for summary judgment.

By contrast, Plaintiff Rickenbach's other causes of action, all parties agree, are subject to the six year statute of limitation in N.J. Stat. Ann. § 2A:14–1.[7] The Amended Complaint alleges that Rickenbach paid the disputed fees "on or about December 26, 2001" and "on or about May 30, 2002," (Am.Compl.¶¶ 18, 21), but Defendants submit the document by which Rickenbach made his final payment, a check dated April 9, 2002 with a notation "satisfy mtg," (Dzura Certification, Ex. 2). Plaintiffs do not dispute the authenticity of this document, for they did not challenge it in either of their two opposition briefs or their sur-reply, and defend only the McTagues' claims (except for the contract claim, which Plaintiffs argue survives dismissal for both Rickenbach and the McTagues). The Court may therefore rely on this check, for it is undisputedly authentic and integral to Plaintiff Rickenbach's claims. *See Pension Benefit Guar. Corp. v. White Consol. Indus.*, 998 F.2d 1192, 1196 (3d Cir.1993) ("[A] court may consider an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document."); *Lum*, 361 F.3d at 222 n. 3 ("A document forms the basis of a claim if the document is 'integral to or explicitly relied upon in the complaint.' ")

(quoting *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997)). The check itself is not inconsistent with Rickenbach's allegation that he made his payment "on or about May 30, 2002," but even if it were the Court would rely on the undisputedly authentic document for the date of payment. *See ALA, Inc. v. CCAIR, Inc.*, 29 F.3d 855, 859 n. 8 (3d Cir.1994) ("Where there is a disparity between a written instrument annexed to a pleading and an allegation in the pleading based thereon, the written instrument will control."). It being evident that Plaintiff Rickenbach's cause of action accrued over six years before bringing suit, the Court will dismiss those claims subject to the six year statute of limitation—negligence, breach of duty of good faith and fair dealing, unfair and deceptive assessment and collection of fees, and violations of the Fair Foreclosure Act, New Jersey State Court Rules, New Jersey Consumer Fraud Act, and Truth–in–Consumer Contract, Warranty and Notice Act—as to Defendant Zucker and Defendants Wells and MERS.

### 4. *Unfair and Deceptive Assessment and Collection of Fees*

The Court agrees with Defendants that there is no cause of action for "unfair and deceptive assessment and collection of fees" under New Jersey law (and Plaintiffs have presented no argument to the contrary). Plaintiffs' allegations of fraud are subsumed in Count VIII under the New

---

**7.** Section 2A:14–1 reads:

Every action at law for trespass to real property, for any tortious injury to real or personal property, for taking, detaining, or converting personal property, for replevin of goods or chattels, for any tortious injury to the rights of another not stated in sections 2A:14–2 and 2A:14–3 of this Title, or for recovery upon a contractual claim or liability, express or implied, not under seal, or upon an account other than one which

concerns the trade or merchandise between merchant and merchant, their factors, agents and servants, shall be commenced within 6 years next after the cause of any such action shall have accrued.

This section shall not apply to any action for breach of any contract for sale governed by section 12A:2–725 of the New Jersey Statutes.

N.J. Stat. Ann. § 2A:14–1.

Jersey Consumer Fraud Act and so the Court will dismiss Count V for failure to state a claim for which relief may be granted.

### 5. *Fair Foreclosure Act*

■ Defendants argue, and the Court agrees, that there is no private right of action under the Fair Foreclosure Act. As Judge Kugler recently explained under similar circumstances and in support of his conclusion that the FFA does not provide a private right of action:

> The policy behind the FFA is that "homeowners should be given every opportunity to pay their home mortgages, and thus keep their homes...." [N.J. Stat. Ann.] § 2A:50–53. To that end, the FFA creates a variety of procedures by which a debtor can cure a default on a mortgage, including a provision that "limits the amount of attorneys' fees to be paid by a mortgagor who is curing a mortgage default to 'the amount permitted under the Rules Governing the Courts of the State of New Jersey.'" *In re Lipscomb*, No. 05–18722, 2006 WL 4452988, *5 (Bankr.D.N.J.2006) (citing [N.J. Stat. Ann.] § 2A:50–57). The FFA is essentially a notice provision, which provides specific guidance to residential mortgage lenders on the steps necessary to foreclose. [N.J. Stat. Ann.] § 2A:50–56.

*Whittingham v. Amended Mortgage Elec. Registration Servs., Inc.*, No. 06–3016, 2007 WL 1456196, at *5 (D.N.J. May 15, 2007). Contrary to Plaintiffs' suggestion, the mere fact that the legislature intended the FFA to protect homeowners by setting forth notice requirements for foreclosure proceedings and procedure to cure a default does not mean that the legislature intended to provide homeowners the right to bring an independent action (outside of the foreclosure proceeding) based on alleg-

edly improper attorneys' fees. There is no evidence that the legislature intended to create a private right of action regarding excessive attorneys' fees through the FFA. *Id.* In the absence of any evidence that the legislature intended to create a private right of action, Plaintiffs cannot state a claim under the FFA. *See Jalowiecki v. Leuc*, 182 N.J.Super. 22, 440 A.2d 21, 25–26 (N.J.Super.Ct.App.Div.1981).

### 6. *New Jersey Court Rules*

■ Plaintiffs similarly cannot state a claim under the New Jersey Court Rules, and in particular under Rules 4:42–9(a)(4) (governing attorneys' fees) or 4:42–10(a) (governing foreclosure fees), because the rules do not provide a private right of action. *Whittingham*, 2007 WL 1456196, at *6; *Kearny Barge Co., Inc. v. Global Ins. Co.*, 943 F.Supp. 441, 462 (D.N.J. 1996); *Leonardis v. Burns Intern. Sec. Services, Inc.*, 808 F.Supp. 1165, 1184–86 (D.N.J.1992). New Jersey Court Rules are rules of procedure and do not provide substantive rights. *See* N.J. Rule 4:1 ("The rules in Part IV [Rules Governing Civil Practice], insofar as applicable, govern the practice and procedure of civil actions in the Superior Court, Law and Chancery Divisions ..."). This is so because "the New Jersey Supreme Court has long held that its power to create rules governing the courts of New Jersey, as provided by Article VI, section 2, paragraph 6 of the New Jersey State Constitution, is limited to matters of court practice and procedure, and does not empower it to create substantive law or rights." *Leonardis*, 808 F.Supp. at 1185. Courts have consequently found that "Rule 4:42–9 is a rule of state court procedure and does not create an independent law claim." *Kearny Barge*, 943 F.Supp. at 462 (citing *Leonardis*, 808 F.Supp. at 1186); *see First State Underwriters Agency of New England Reinsurance Corp. v. Travelers Ins. Co.*, 803

F.2d 1308, 1315–16 (3d Cir.1986) (holding that a conflict of law regarding attorneys' fees is an issue of procedural law and so the forum state's law on that issue should be applied). Rule 4:42–10(a), which sets of "fees allowable" in a foreclosure action, likewise is a rule of state court procedure and does not create an independent cause of action. *Whittingham*, 2007 WL 1456196, at *6 (holding the neither Rule 4:42–10(a) nor 4:42–9(a)(4) create a private right of action). The Court will therefore dismiss Plaintiffs' claim under the New Jersey Court Rules.

### 7. *Truth–in–Consumer Contract, Warranty and Notice Act*

■ Defendants argue on reply[8] that Plaintiffs cannot state a claim under the New Jersey Truth–in–Consumer Contract, Warranty and Notice Act because the letter to the McTagues that included the allegedly improper charges was sent by Defendant Zucker, as the attorney for Defendants Wells and MERS, not Wells or MERS. The Court rejects this argument. Plaintiffs McTague allege that Defendant Zucker represented Wells and MERS throughout the foreclosure proceeding and

mailed the payoff statement to the McTagues "on behalf of MERS and WELLS." (Am.Compl.¶¶ 4, 28.) Defendants Wells and MERS cannot escape liability for conduct of their alleged agent. The Court finds that Plaintiffs have sufficiently alleged that they received "notice" from Wells and MERS through their attorney agent Zucker and so the Court will not dismiss their claim under the Truth–in–Consumer Contract Act.[9]

### B. Defendant Zucker's Motion to Dismiss

Defendant Zucker asks the Court to dismiss all claims against the law firm by all plaintiffs. As to all plaintiffs, Defendant Zucker argues that the two remaining counts brought against the law firm should be dismissed because Defendant Zucker is protected by New Jersey's common law litigation privilege. Further, according to Defendant Zucker, Plaintiffs have failed to state a claim for either of the two alleged torts. Having dismissed all of Plaintiff Rickenbach's claims against Defendant Zucker as untimely, *see* Part III.B.3, the Court need not address Zucker's attacks on the merits of those claims. The Court

---

**8.** Though generally courts will not consider arguments raised only on reply, *supra* note 3, in this circumstance Plaintiffs were given an opportunity to file a sur-reply and thus had an opportunity to respond to Defendants' argument, so the Court will take note of Defendants' argument. *See Bayer*, 129 F.Supp.2d at 716 (noting the rationale for striking arguments raised in the first instance on reply is that generally a sur-reply is not permitted and so non-moving party has no opportunity to respond).

**9.** The New Jersey Truth–in–Consumer Contract, Warranty and Notice Act provides in relevant part:

No seller, lessor, creditor, lender or bailee shall in the course of his business offer to any consumer or prospective consumer or enter into any written consumer contract or give or display any written consumer war-

ranty, notice or sign after the effective date of this act which includes any provision that violates any clearly established legal right of a consumer or responsibility of a seller, lessor, creditor, lender or bailee as established by State or Federal law at the time the offer is made or the consumer contract is signed or the warranty, notice or sign is given or displayed. Consumer means any individual who buys, leases, borrows, or bails any money, property or service which is primarily for personal, family or household purposes.

N.J. Stat. Ann. § 56:12–15. Defendants have not presented argument as to whether the payoff statement violated a "clearly established legal right" of the McTagues and the Court will not, *sua sponte*, take up this issue now.

finds, as will be explained at length below, that Plaintiffs McTague's claims fail under the litigation privilege. There Court therefore will grant Defendant Zucker's motion to dismiss in full.

### 1. *Litigation Privilege*

■ Defendant Zucker argues that the McTagues base their claims against Defendant Zucker on "payoff statements" prepared and provided as part of the foreclosure proceedings against the various plaintiffs and so Zucker is protected by New Jersey's litigation privilege. Plaintiffs respond by suggesting that the litigation privilege is limited to defamation actions, claims under 42 U.S.C. § 1983, and the New Jersey Law Against Discrimination.[10] The Court finds Plaintiffs McTague's claims against Defendant Zucker are based solely on communications made for the purpose of litigation and thus fail under the litigation privilege.

■ The litigation privilege has deep roots in the common law of New Jersey. *Loigman v. Twp. Comm. of Twp. of Middletown*, 185 N.J. 566, 889 A.2d 426, 433 (2006). The privilege insures that "[s]tatements by attorneys, parties and their representatives made in the course of judicial or quasi-judicial proceedings are absolutely privileged and immune from liability." *Peterson v. Ballard*, 292 N.J.Super. 575, 679 A.2d 657, 659 (N.J.Super.Ct.App.Div.1996) (citing *Erickson v. Marsh & McLennan Co., Inc.*, 117 N.J. 539, 569 A.2d 793 (1990)). The privilege is expansive. New Jersey courts "have extended the reach of the litigation privilege even to statements made by attorneys outside the courtroom, such as in attorney interviews and settlement negotiations." *Loigman*, 889 A.2d at 438. The underlying principle is to allow parties to such proceedings "unfettered expression critical to advancing the underlying government interest at stake in those settings." *Peterson*, 679 A.2d at 659–60 (quoting *Erickson*, 569 A.2d at 805). As such, there are just four elements of the privilege. It is applicable to

> any communication (1) made in judicial or quasi-judicial proceedings; (2) by litigants or other participants authorized by law; (3) to achieve the objects of the litigation; and (4) that have some connection or logical relation to the action.

*Hawkins v. Harris*, 141 N.J. 207, 661 A.2d 284, 289 (1995). Whether the privilege applies in a particular case is a question of law. *Peterson*, 679 A.2d at 664.

■ Contrary to Plaintiffs' suggestion, the litigation privilege is well-established and broadly applicable. *Loigman*, 889 A.2d at 435–37. "In New Jersey, the litigation privilege protects attorneys not only from defamation actions, but also from a host of other tort-related claims." *Id.* at 436. As the New Jersey Supreme Court has long noted, "If the policy, which in defamation actions affords an absolute privilege or immunity to statements made in judicial and quasi-judicial proceedings, is really to mean anything then we must not permit its circumvention by affording an almost equally unrestricted action under a different label." *Rainier's Dairies v. Raritan Valley Farms*, 19 N.J. 552, 117 A.2d 889, 895 (1955), *cited with approval*

---

10. Plaintiffs further argue that the privilege does not apply to claims under the Fair Debt Collection Practices Act ("FDCPA"). Plaintiffs, however, have not asserted claims under the Fair Debt Collection Practices Act in this action. Moreover, in a recent case from this district, Judge Cavanaugh rejected just this argument under similar circumstances (and by the same counsel) where the plaintiffs did seek relief under the FDCPA. *Ogbin v. Fein, Such, Kahn & Shepard, P.C.*, No. 08–4138, 2009 WL 1587896, at *2–3 (D.N.J. June 1, 2009) (finding litigation privilege applies to claims under the FDCPA).

*by Loigman,* 889 A.2d at 436. Consequently, New Jersey courts have applied the litigation privilege to intentional and negligent infliction of emotional distress, *see, e.g. Rabinowitz v. Wahrenberger,* 406 N.J.Super. 126, 966 A.2d 1091 (N.J.Super.Ct.App.Div.2009), material misrepresentation, *Commercial Ins. Co. of Newark v. Steiger,* 395 N.J.Super. 109, 928 A.2d 126 (2007), and negligent misrepresentation, fraud, and malicious interference with prospective economic advantage, *Ruberton v. Gabage,* 280 N.J.Super. 125, 654 A.2d 1002 (1995). In *Loigman,* the New Jersey Supreme Court found it significant that "[i]n many jurisdictions, '[t]he spectrum of legal theories to which the privilege has been applied includes negligence, breach of confidentiality, abuse of process, intentional infliction of emotional distress, negligent infliction of emotional distress, invasion of privacy, civil conspiracy, interference with contractual or advantageous business relations, [and] fraud.' " 889 A.2d at 436 (quoting *Absolute Immunity from Civil Liability: Lessons for Litigation Lawyers,* 31 Pepp. L.Rev. 915, 928 (2004)).

Far from being an exception, the litigation privilege is applicable as a general rule. When considering whether a defendant in a New Jersey Law Against Discrimination ("LAD") claim could avail himself of its protections, the New Jersey Appellate Division looked to whether the New Jersey statute had "abrogated the litigation privilege." *Peterson,* 679 A.2d at 659, *cited with approval by Loigman,* 889 A.2d at 438. The court ultimately concluded that the LAD did not abrogate the well-established privilege, noting that "implied abrogation of the litigation privilege is not favored." *Id.* at 662. Recently, in *Loigman* the New Jersey Supreme Court held that the common law privilege is applicable even to a federal claim under 42 U.S.C. § 1983. 889 A.2d at 434–37. In fact, it appears under New Jersey law that the

only claim from which defendants expressly cannot seek protection through the litigation privilege is malicious prosecution. *Loigman,* 889 A.2d at 436 n. 4.

In light of the preceeding discussion, the Court has no difficulty in finding that the litigation privilege may be applied to tort claims of negligence and breach of a duty of good faith and fair dealing. The Court must discern whether, taking the allegations as true and construing them in the light most favorable to Plaintiffs, those claims are barred by the litigation privilege. The Court will address each element in turn.

Plaintiffs McTague's allegations against Defendant Zucker focus entirely on the payoff statement Defendant Zucker provided the McTagues following the commencement of foreclosure proceedings. That letter was prepared in response to a request made by counsel for McTagues as a means to facilitate dismissal of the foreclosure action. The Court finds that this letter was a communication made in quasi-judicial proceedings and so meets the first element of the litigation privilege. "Absolute immunity is not limited to what a person may say under oath while on the witness stand; it extends to all statements or communications in connection with the judicial proceeding." *Ruberton,* 654 A.2d at 1006. New Jersey courts have recognized that statements made during an interview of a witness in anticipation of trial and during a settlement conference are privileged communications. *Loigman,* 889 A.2d at 438. Prelitigation "demand letters" seeking resolution of a dispute before filing suit are likewise protected. *Waterloov Gutter Protection Sys. Co., Inc. v. Absolute Gutter,* 64 F.Supp.2d 398, 415 (D.N.J.1999) (citing *Kanengiser v. Kanengiser,* 248 N.J.Super. 318, 590 A.2d 1223, 1230 (N.J.Super. Ct.

Law Div.1991)). In the present case, Defendant Zucker's alleged negligence and breach of good faith stem from a letter prepared in response to a request by Plaintiffs' counsel and on behalf of Defendants Well and MERS, all parties in a judicial proceeding. The first element is met.

The next three elements quickly follow. Defendant Zucker represented Defendants Wells and MERS in judicial proceedings, meeting the second prong. The communication was made by litigants in the judicial proceedings. *See Hawkins*, 661 A.2d at 289. The purpose of the letter was to resolve the foreclosure action, meeting the third prong. The letter was prepared to achieve the object of the litigation. *See id.* And the letter was prepared in response to a request from the McTagues' counsel in those proceedings in order to resolve those proceedings, thus meeting the fourth prong. The letter had a close connection to the judicial action. *See id.* Defendant Zucker is immune from suit based on the payoff statement it sent on behalf of parties involved in litigation. *See Steiger*, 928 A.2d at 131–32 (claim that expert witness materially misrepresented facts during testimony barred by litigation privilege).

In a very recent case, Judge Cavanaugh of this district dismissed nearly identical claims on the grounds that they were barred by the litigation privilege. *Ogbin v. Fein, Such, Kahn & Shepard, P.C.*, No. 08–4138, 2009 WL 1587896 (D.N.J. June 1, 2009). The plaintiffs in *Ogbin* brought suit after receiving two "payoff letters" sent during plaintiff's foreclosure proceedings from a law firm on behalf of plaintiff's mortgage provider and in response to the request of plaintiff's counsel. *Id.* at *1. The *Ogbin* plaintiffs sued the law firm for negligence, intentional misrepresentation, and for violating the Federal Debt Collection Practices Act. *Id.* at *1–2. Judge Cavanaugh dismissed all claims against the law firm finding that the payoff letters were subject to the litigation privilege and all of the plaintiffs' claims arose from and relied upon those letters and should be dismissed. *Id.* at *2–3.

Plaintiffs McTague's claims against Defendant Zucker are similarly barred by the litigation privilege. The McTagues' allegations against Defendant Zucker arise solely from the payoff statement Zucker sent to their counsel. Plaintiffs' broad accusations of Defendants' misconduct relating to "defaulting borrowers of residential mortgages" in general cannot save the McTagues' claim against Defendant Zucker in particular. Plaintiffs must state a claim for which relief may be granted, and cannot rely on injury to a proposed class. *See Winer Family Trust v. Queen*, 503 F.3d 319, 325–26 (3d Cir.2007) ("A potential class representative must demonstrate individual standing vis-as-vis [sic] the defendant; he cannot acquire such standing merely by virtue of bringing a class action.") (quoting *Fallick v. Nationwide Mut. Ins. Co.*, 162 F.3d 410, 423 (6th Cir. 1998)). The Court will grant Defendant Zucker's motion to dismiss Plaintiffs McTague's claims.[11]

## IV. CONCLUSION

For the foregoing reasons, the Court will grant Defendant Zucker's motion to dismiss in full, and Defendants Wells' and

---

**11.** The Court notes that Defendants Wells and MERS may also be protected from the McTagues' claims under the litigation privilege. *See Loigman*, 889 A.2d at 439 (holding that a party is entitled to the same litigation privilege as its representative). The Court will not, however, decide this matter as it was not raised by Wells or MERS, was not briefed by the parties, and involves application of the privilege to statutory claims not brought against Defendant Zucker.

MERS's motion to dismiss in part. As to Plaintiff Rickenbach, the Court will dismiss all but his contract claim (Count I) against Defendant Wells and MERS. As to Plaintiffs McTague, the Court will dismiss their claims for unfair and deceptive assessment and collection of fees (Count V), for violations of the Fair Foreclosure Act (Count VI), and for violations of the New Jersey Court Rules (Count VII). In light of Plaintiffs' voluntary dismissal of their unjust enrichment claims (Count IV), the Court will likewise dismiss those claims. Plaintiffs McTague may continue to pursue their claims for breach of contract (Count I), negligence (Count II), breach of the implied duty of good faith and fair dealing (Count IV), for violations of the New Jersey Consumer Fraud Act (Count VIII), and for violations of the New Jersey Truth–in–Consumer Contract, Warrant and Notice Act (Count IX) against Defendants Wells and MERS only. The above-recited dismissals are with prejudice for any attempt at amendment would be futile.